IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| EDWARD J. JABLONSKI, JR., ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:07-cv-386 |
| ) | |
| ST. PAUL FIRE AND MARINE ) | |
| INSURANCE COMPANY, ) | Senior Judge Thomas A. Wiseman, Jr. |
| ) | |
|     Defendant. ) | |

**MEMORANDUM OPINION**

Before the Court is Plaintiff Edward Jablonski, Jr.'s Motion to Amend the Final Judgment to Include Prejudgment Interest (Doc. No. 360), filed pursuant to Fed. R. Civ. P. 59(e). Specifically, Jablonski asserts that he is entitled to prejudgment interest on the interim judgment entered on May 5, 2008 in his favor in the declaratory judgment action filed by Defendant St. Paul Fire & Marine Insurance Company ("St. Paul"), as well as prejudgment interest on the $126,000 judgment entered in his favor on his counterclaim under Florida's bad faith statute, Fla. Stat. § 624.155. Finally, Jablonski asserts that he is entitled to prejudgment interest on attorneys' fees incurred by him in litigating this matter.

In response, St. Paul does not contest that prejudgment interest on the attorneys' fee amount may be awarded but contends that Jablonski's request is premature since no attorneys' fees have yet been awarded. With respect to the request for prejudgment interest on the judgment entered in May 2008, St. Paul contends that (1) the time for filing a motion to amend that judgment has expired; and (2) even if the Court finds prejudgment interest is warranted, such interest began to accrue no earlier than thirty days after the date of the appraisal award, or February 22, 2007, by which time St. Paul had paid all but $60,658.89 of the awarded amount. As for the June 9, 2009 judgment, St. Paul asserts that prejudgment interest is not warranted because there was no ascertainable out-of-pocket loss that occurred on a date specific from which prejudgment interest could be calculated.

For the reasons discussed below, the motion will be granted in part and denied in part.

**I.    PREJUDGMENT INTEREST ON ATTORNEYS' FEES**

As an initial matter, the Court agrees with St. Paul that the question of prejudgment interest on any award of attorneys' fees should be considered in conjunction with such an award. To the extent the motion seeks prejudgment interest on attorneys' fees, it will be denied, without prejudice, as unripe.

## II.    PREJUDGMENT INTEREST ON THE MAY 5, 2008 JUDGMENT

### A.    Jablonski's Motion Was Timely

Pursuant to Rule 54 of the Federal Rules of Civil Procedure, the judgment entered on St. Paul's original declaratory judgment did not function as a final judgment but rather an interim judgment that was subject to revision at any time prior to the entry of a final judgment disposing of all claims in this action:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties *only if the court expressly determines that there is no just reason for delay*. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(d) (emphasis added). Eleventh Circuit precedent has clearly established that, in cases falling within the purview of Rule 54(d), the district court may enter a final appealable judgment against fewer than all of the parties "only if it certifies pursuant to Rule 54(b) that 'there is no just reason for delay.' " *Wilson v. Navistar Int'l Transp. Corp.*, 193 F.3d 1212, 1213 (11th Cir. 1999) (quoting Fed. R. Civ. P. 54(b)), *overruled on other grounds*, *Saxton v. ACF Indus.*, 254 F.3d 959 (11th Cir. 2001).

Neither party sought such certification in this case, nor did this Court enter any Rule 54(b) certification. Consequently, the judgment entered on May 5, 2008 did not constitute a final appealable judgment and remained subject to revision up until entry of the final judgment on June 9, 2009. Jablonski's motion to alter or amend the May 2008 order dismissing as moot St. Paul's declaratory judgment action, filed well within ten days of the June 9, 2009 final judgment, therefore fell within the ten-day time limit prescribed by Rule 59(e) for the filing of a motion to alter or amend judgment.

### B.    When Did Prejudgment Interest Begin to Accrue?

Florida courts have long adhered to "the position that prejudgment interest is merely another element of pecuniary damages." *Argonaut Ins. Co. v. May Plumbing Co.*, 474 So. 2d 212, 214 (Fla. 1985) (citations omitted). Under this theory, "the loss itself is a wrongful deprivation by the defendant of

the plaintiff's property. Plaintiff is to be made whole from the date of the loss once a finder of fact has determined the amount of damages and defendant's liability therefor." *Id.* at 215. Because prejudgment interest is "an element of damages as a matter of law," the Florida Supreme Court has determined that the computation thereof is not a task for the finder of fact. Instead, Florida statute sets the rate of interest that pertains to prejudgment interest, such that "[o]nce a verdict has *liquidated the damages as of a date certain*, computation of prejudgment interest is merely a mathematical computation. . . . Thus, it is a purely ministerial duty of the trial judge or clerk of the court to add the appropriate amount of interest to the principal amount of damages awarded in the verdict." *Id.*

Confronted with a factually somewhat similar circumstance, the Eleventh Circuit held, based on Florida law, that the appraisal of an insured loss did not toll the time from which prejudgment interest was due. Instead, irrespective of the appraisal process, the insured was entitled to prejudgment interest from the time proceeds became due under policy. *Columbia Cas. Co. v. Southern Flapjacks, Inc.*, 868 F.2d 1217, 1218 (11th Cir. 1989). Pursuant to the express terms of the policy at issue in that case, the insurer was required to pay all adjusted claims within thirty days after the insured submitted a satisfactory proof of loss. Although the insured had filed its proof of loss in accordance with the policy requirement, the insurer refused to pay. Several months later, the insurer formally declined coverage. After the insured threatened to file suit, the insurer withdrew its declination and requested appraisal pursuant to the terms of the policy. A disinterested umpire ultimately rendered an award of $136,589.77, and the insured demanded prejudgment interest. The trial court awarded prejudgment interest on that amount dating from thirty days after the insured's submission of the proof of loss. The Eleventh Circuit affirmed on the basis that the specific policy governing the parties' relationship unambiguously obligated the insurer to pay a loss within thirty days of the adjustment. *Id.* at 1222. *Cf. Ocean Harbour S. Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 05-14235-CIV, 2007 WL 1059577, at *2 (S.D. Fla. April 6, 2007) ("Prejudgment interest accrues from the date payment is due." (citing *Golden Door Jewelry Creations, Inc. v. Lloyds*, 117 F.3d 1328, 1341 (11th Cir. 1997), *and Lumbermens Mut. Cas. Co. v. Percefull*, 653 So. 2d 389, 390 (Fla. 1995) (expressly holding that prejudgment interest on contract damages accrue from the date payment becomes due under the contract, and distinguishing the case before it from those

involving unliquidated personal injury claims, in which prejudgment interest generally is not an element of the damages).[1]

There is no dispute in the present case that Jablonski is entitled to prejudgment interest. The question is at what point did interest begin to accrue. To answer that question, the Court must determine as a matter of contract law when St. Paul's obligation to pay Jablonski for the damage to his boat ripened. St. Paul has not bothered to address this question, and Jablonski, while correctly arguing the law, made no effort to point to the specific language in the insurance policy pertaining to St. Paul's obligation to pay on a loss.[2] As far as this Court can ascertain, the policy itself contains only the following potentially relevant statements:

> We'll pay you and any lienholder within 30 days after we reach agreement with you.

(Policy, Trial Ex. 2, at 7.)

And:

> If agreement can't be reached on the amount of loss or the value of your boat, the following procedure will be used.
>
> 1. One of us will make a written demand for an appraisal.
>
> 2. Each will select a competent and impartial appraiser and notify the other of the selection within 30 days of the demand.
>
> 3. The appraiser will select a competent and impartial umpire. . . .
>
> 4. The appraisers will state separately the amount of the loss and the value of your boat. If they don't agree, they'll submit their appraisals to the umpire. Agreement of two out of three will be binding.

(*Id.* at 5.)

---

[1] The court also noted that the defendant insurer cited and relied, for its contrary position, on several Florida cases whose holdings at an initial glance appeared to undermine the Southern Flapjacks holding. The court considered those cases closely, however, and determined that they were distinguishable on the basis of the terms of the policy at issue in the particular case or the type of coverage involved.

[2] The Court is troubled by both parties' conduct in regard to their positions in support of and in opposition to this Motion. Jablonski argues the law correctly when he contends that the terms of the insurance contract are controlling, but then neglects to reference the contract terms at all, much less to acknowledge that the relevant terms do not support his position. St. Paul's contention as to when prejudgment interest began to accrue in this case is ultimately correct, but the law upon which the defendant relied to reach that result is completely inapposite to the situation at hand.

Case 2:07-cv-00386-JES-SPC    Document 375    Filed 07/13/2009    Page 5 of 7

5

The Court interprets these policy provisions, read in conjunction with each other, to mean that St. Paul's obligation to make payment on a loss did not arise until thirty days after the parties reached an agreement as to the value of the loss. Where, as here, the parties are unable to reach an agreement on their own, then the requisite agreement must be reached through recourse to the appraisal procedure. In the case at bar, no agreement was reached until the umpire, Richard DeFreitas, entered his binding appraisal on January 23, 2007. Under the policy, St. Paul had thirty days from that date to submit payment. St. Paul actually paid all but $60,658.89 of the amount awarded within thirty days, on February 22, 2007, and it paid the remaining $60,658.89 on July 16, 2007. Consequently, St. Paul owes prejudgment interest only on the $60,658.89, and only from February 22 until July 16, 2007, in the amount of $2,614.04. *See* Fla. Stat. § 55.03 *and* http://www.fldfs.com/aadir/interest.htm.

### III.    PREJUDGMENT INTEREST ON THE JUNE 9, 2009 JUDGMENT

With respect to the amount awarded at trial of this matter by the jury in the amount of $126,000, on which judgment was entered on June 9, 2009, St. Paul first argues that it should not be liable for prejudgment interest at all because there was no liquidated damages amount. The Florida courts have clearly rejected that argument, standing alone. As the Fourth District Court of Appeals observed recently, the holding in *Argonaut* established that, under the " 'loss theory' of damages, 'neither the merit of the defense *nor the certainty of the amount of loss* affects the award of prejudgment interest[.]' " *Berloni S.p.A. v. Della Casa, LLC*, 972 So. 2d 1007, 1011 (Fla. 4th Dist. Ct. App. 2008) (emphasis added) (quoting *Argonaut*, 474 So. 2d at 215). In other words, the jury's computation of the amount of damages to which Jablonski was entitled had the effect of liquidating the damages amount, and it is completely immaterial that the amount was not previously liquidated.

The second argument advanced by St. Paul is that there has been no factual finding as to when the loss occurred. Jablonski himself advances several possible dates as dates upon which the Court might reasonably conclude that he suffered the loss for which the jury determined he was entitled compensation: February 13, 2005, the date "within which the boat could have been repaired" (Doc. No. 360, at 19); June 23, 2005, "the date the *Willpower* arrived at Salt Creek Marina and . . . could be repaired" (*id.*); July 27, 2005 or October 12, 2005, "when St. Paul . . . misrepresented pertinent facts and Policy provisions" (*id.* at 10–11) and engaged in tactics that further delayed the progress of repairs. On

the basis of Jablonski's own uncertainty as to the date from which prejudgment interest should be deemed to begin to accrue, St. Paul argues that because there is no fixed date of loss, Jablonski is not entitled to an award of prejudgment interest. (Doc. No. 372, at 7–9 (citing *Nat'l R.R. Passenger Corp. v. Rountree Transp. & Rigging, Inc.*, 286 F.3d 1233, 1259 (11th Cir. 2002); *Underhill Fancy Veal, Inc. v. Padot*, 677 So. 2d 1378, 1380 (Fla. 1st Dist. Ct. App. 1996) ("There are two prerequisites to the award of prejudgment interest as damages: (1) Out-of-pocket pecuniary loss, and (2) a fixed date of loss.").

The Court finds this argument to be persuasive. *Underhill Fancy Veal*, in fact, stands for the proposition that "[p]rejudgment interest is generally not awarded in tort cases, because damages are generally too speculative to liquidate before final judgment." 677 So. 2d at 1380. That principle is "not absolute, however, and prejudgment interest may be awarded in tort cases as to those damages where there has been an ascertainable out-of-pocket loss occurring at a specific time prior to the entry of the judgment." *Underhill Fancy Veal*, 677 So. 2d at 1380. The *Underhill* court distinguished between property-damages claims and tort claims, noting that "prejudgment interest has been upheld in incidents involving the loss of vested property rights," and that in such cases, "it is not necessary to demonstrate that the party has actually made an expenditure to replace the property" or "to demonstrate that the parties are in agreement as to the value of the damages on the date of the loss, only that the value was ascertainable at that time." *Id.* (citations omitted). *Cf. Alvarado v. Rice*, 614 So. 2d 498, 499 (Fla. 1993) ("To date, cases recognizing a right to prejudgment interest have all involved the loss of a vested property right.").

In the case at bar, Jablonski's entitlement to payment of the loss caused by Hurricane Charley pursuant to the terms of the insurance contract entered into by and between him and St. Paul was a property right that vested at the time St. Paul's obligation to pay the loss ripened, as discussed above. Jablonski's statutory bad-faith claim, however, is more readily characterized as a tort claim than a claim involving property damage. Moreover, beside the fact that the value of Jablonski's claim was not readily ascertainable until the jury rendered its verdict in this case, even now there is no way to pinpoint the specific time at which its value would have been ascertainable. *Cf. Underhill Fancy Veal*, 677 So. 2d at 1380. In theory, Jablonski could have asked the jury to determine a date on which his loss became

ascertainable. In the absence of such a factual finding, it is inappropriate for this Court to substitute its own best estimate as to what that date might be.

Jablonski's motion for prejudgment interest on the $126,000 judgment rendered on June 9, 2009 will therefore be denied.

## IV.    CONCLUSION

Jablonski is entitled to prejudgment interest on the amount of $60,658.89 dating from February 23, 2007 through July 16, 2007 at the statutory rate of 11%, totaling $2,614.04. In that respect, his motion to amend the Final Judgment will be granted. In all other respects, Jablonski's motion to amend the judgment will be denied. An appropriate Order will enter.

_____
Thomas A. Wiseman, Jr.
Senior U.S. District Judge
Sitting by Designation in the
Middle District of Florida