# THE UNITED STATES DISTRICT COURT
## THE MIDDLE DISTRICT OF FLORIDA
### (Fort Myers Division)

CASE NO.: 2:07-cv-00386-JES-SPC

EDWARD J. JABLONSKI, JR.,

> Plaintiff,

vs.

ST. PAUL FIRE AND MARINE INSURANCE
COMPANY,

> Defendant.

_____/

## JABLONSKI'S VERIFIED MOTION FOR ATTORNEY'S FEES AND COSTS AND INCORPORATED MEMORANDUM OF LAW

Plaintiff, Edward J. Jablonski, Jr. ("Jablonski"), pursuant to Fed. R. Civ. P. 54(d) and

M.D. Fla. L.R. 4.18, moves this Court for the entry of an Order determining both his entitlement

to and the amount of attorney's fees and costs owed by St. Paul Fire and Marine Insurance

Company ("St. Paul") to Jablonski, as follows:

### INTRODUCTION

The Florida Legislature enacted Section 624.155 in a attempt to level the playing field

between individual policyholders like Jablonski and insurance behemoths like Travelers.[1]

Recognizing that all policyholders in Florida pay insurance premiums in advance in order to

protect their financial security in the event of a covered loss (which premium dollars may be

used by unscrupulous insurers to resist legitimate claims), the Legislature sensibly decided that

bad faith insurers, like St. Paul here, be required to pay the attorneys' fees and costs of the

prevailing policyholder. In this case, St. Paul forced Jablonski to vindicate his rights both under

---

[1] St. Paul Fire and Marine Insurance Company is a wholly owned subsidiary of The Travelers Companies, Inc.

the contract and in a successful claim for statutory bad faith tried to a jury. After St. Paul elected to file suit against its policyholder, invoking this Court's Admiralty jurisdiction in a misguided effort to divest Jablonski of a jury trial on his statutory bad faith claim, Jablonski prevailed on nearly every significant issue in this case in the face of a spare-no-penny defense bent entirely on obstruction. St. Paul employed five (5) separate law firms to erect every conceivable obstacle and forestall an ultimate day of reckoning before a Florida jury. In the end, the jury agreed that St. Paul had acted in bad faith and awarded consequential damages. St. Paul's scorched earth defense, however, required Jablonski to incur substantial attorneys' fees and costs in order to prevail. As provided by settled law, those very fees and costs now must be charged to St. Paul – in full. Otherwise, insurance companies will emulate St. Paul's bad faith conduct without concern for the Legislature's directive that they be held fully responsible for the prevailing policyholder's attorneys' fees and litigation costs.

## PROCEDURAL HISTORY

Jablonski's 60 foot sailboat was severely damaged by Hurricane Charlie on August 13, 2004. Unable to persuade St. Paul to indemnify him for covered loss during the ensuing 2½ years, Jablonski eventually filed a Civil Remedy Notice of Insurer Violation on December 21, 2006, and the claim proceeded to appraisal. The appraisal umpire entered his award of $341,284.00 on January 13, 2007. But St. Paul still refused to pay the award in full. On June 16, 2007, St. Paul instead sued Jablonski seeking a declaration that its payment of an amount less than the appraisal award constituted the total amount due Jablonski. On September 19, 2007, Jablonski filed his counterclaim seeking damages arising out of St. Paul's violations of Fla. Stat. § 624.155 with respect to its investigation, evaluation, adjustment, underpayment and litigation of the covered 2004 Hurricane Charley loss to Jablonski's sailboat. On May 5, 2008, this Court

entered an Order granting Jablonski judgment on the pleadings, agreeing with Jablonski that $330,784 was the total amount due under the insurance policy and that his statutory bad faith claim was ripe and properly tried to a jury. By Order dated December 1, 2008, this Court confirmed Jablonski's entitlement to attorney's fees and costs pursuant to Fla. Stat. § 627.428 for prevailing in the declaratory action, reserving jurisdiction as to the amounts. Thus, with respect to the contract case, there is no issue of entitlement.

Jablonski's bad faith action resulted in a June 4, 2009 jury verdict, which determined that St. Paul had acted in bad faith, violated several provisions of Florida's Unfair Insurance Trade Practices Act and awarded additional consequential damages in the amount of $126,000. By Order dated July 13, 2009, this Court entered its Amended Final Judgment in Jablonski's favor, awarding pre-judgment interest. As the prevailing party, Jablonski is entitled to recover his reasonable attorney's fees and court costs pursuant to Fla. Stat. § 624.155(4). Pursuant to 28 U.S.C. §§ 1920 and 1924, Jablonski is also entitled to taxable costs. These amounts are now ripe for determination.[2]

## MEMORANDUM OF LAW

In a diversity case, "a party's right to attorney's fees is determined by reference to state law." *Prime Ins. Syndicate, Inc. v. Soil Tech Distributors, Inc.*, 270 Fed.Appx. 962, 963 (11th Cir. 2008); *see also Zunde v. International Paper Co.*, 2000 WL 1763843 at *1 (M.D. Fla. July 20, 2000); *FIGA v. R.V.M.P. Corp.*, 681 F. Supp. 806, 807 (S.D. Fla. 1988). The burden is on Jablonski to prove the reasonableness of the amount of fees to which he is entitled. *See Florida*

---

[2] Jablonski engaged Ver Ploeg & Lumpkin, P.A. to protect his interests. The fee contract (attached as Exhibit "A") between Jablonski and Ver Ploeg & Lumpkin, P.A. recognizes that this Court will have the opportunity to set fees by motion and order, and accordingly obligates Jablonski to pay the higher of the Court-awarded fee, including a contingency risk multiplier, or the percentage of recovery.

*Patient's Compensation Fund v. Rowe*, 472 So. 2d 1145, 1151 (Fla. 1985); *Torres v. City of Orlando*, 264 F. Supp. 2d 1046, 1056 (M.D. Fla. 2003).

St. Paul, "in light of the jury verdict and judgment entered thereon," acknowledges that Jablonski is the prevailing party and entitled to attorney's fees and costs under Fla. Stat. § 624.155(4).[3] The sole issue before this Court is accordingly the amount of attorney's fees and costs to which Jablonski is entitled, including the propriety and amount of a contingency risk multiplier.

## I.      Attorney's Fees

### A.      *The Lodestar Amount*

Florida has adopted the federal lodestar approach as the starting point in calculating a proper award of attorney's fees. *See Philip Ledington, Inc. v. Assurance Co. of America*, 2007 WL 2714095 at *2 (M.D. Fla. Sept. 17, 2007) (citing *Bell v. U.S.B. Acquisition Co., Inc.*, 734 So. 2d 403, 406-407 (Fla. 1999) (discussing *Rowe*)); *see also Schafler v. Fairway Park Condominium Association*, 147 Fed.Appx. 113, 114-115 (11th Cir. 2005).[4] *Rowe* held that the criteria set forth in Rule 4-1.5(b), Rules Regulating the Florida Bar, should be utilized in determining reasonable attorney's fees.[5] *See Rowe*, 472 So. 2d at 1150. The Rule states:

> **Factors to Be Considered in Determining Reasonable Fee.** Factors to be considered as guides in determining a reasonable fee include:
>
> (1) the time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

---

[3] *See* Kevin O'Brien's June 16, 2009 letter, attached hereto as Exhibit "B." St. Paul nevertheless contests what it considers to be the "amount" of fees owed to Jablonski. As discussed below, St. Paul's disagreement with "amounts" actually relates in part to Jablonski's "entitlement" to certain fees.

[4] "The lodestar approach ... governs the attorney's fees analysis under fee-shifting statutes[,]" such as Fla. Stat. § 624.155(4). *Ruszala v. Walt Disney Co.*, 132 F. Supp. 2d 1347, 1353 (M.D. Fla. 2000) (citing *City of Burlington v. Dague*, 505 U.S. 557, 561-562 (1992)).

[5] The factors set forth in Rule 4-1.5(b) are substantially similar to those set forth in Rule 2-106 of the ABA Code of Professional Responsibility, as cited in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

(2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature;

(4) the significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained;

(5) the time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services; and

(8) whether the fee is fixed or contingent, and, if fixed as to amount or rate, then whether the client's ability to pay rested to any significant degree on the outcome of the representation.

Though this Court is free to consider any or all of these criteria, the first factor is most pertinent to this case. In determining the number of hours reasonably expended, this Court should recognize the novelty and difficulty of the questions involved, *Bell*, 734 So. 2d at 407; *Schafler*, 147 Fed.Appx. at 115, and that bad faith litigation when brought in the face of the opposition here encountered represents a highly complex area of commercial litigation.[6] This Court's lodestar determination should focus primarily on the nature of the litigation itself, particularly since St. Paul – the party objecting to fees – undeniably caused its contentious and costly nature. *Zunde*, 2000 WL 1763843 at *7.

To aid this Court in determining the hours reasonably expended in this litigation, unredacted copies of Ver Ploeg & Lumpkin P.A.'s detailed time records are contemporaneously

---

[6] This fact, proved in this case by the five (5) separate law firms hired to represent St. Paul and the corresponding docket entries, bears equally on factors 2, 4, 5 and 7.

provided to this Court under seal.[7] *See R.V.M.P. Corp.* at 808 (holding that the Florida Supreme Court requires the moving party to submit accurate time records); *see also In re Nibbelink*, 403 B.R. 113, 122 (M.D. Fla. 2009) ("[i]n order to apply the lodestar method an attorney must provide *the Court* with contemporaneous time records detailing the dates, amount, and specific services provided") (emphasis supplied).

### 1. Reasonable Hourly Rates[8]

The starting point in any determination of the value of an attorney's services is to multiply hours reasonably expended by a reasonable hourly rate. *Norman v. Housing Authority of the City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (*citing Hensley v. Eckerhart*, 461 U.S. 424 (1983)). "The burden is on the moving party to establish the prevailing market rate which is determined by considering the rate charged in the community by lawyers of reasonably comparable skill, experience, and reputation for similar services." *Philip Ledington, Inc.*, 2007 WL 2714095 at *3 (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).

In addition to Jason S. Mazer's verification that the hourly rates quoted are charged by Ver Ploeg & Lumpkin, P.A. to their other clients for hourly work, the affidavit of Mark Boyle, Esq. is filed contemporaneously herewith as Exhibit "D." Mr. Boyle has testified to the reasonable hourly rates for partners, associates and legal assistants performing comparable work

---

[7] A very lightly redacted version of Ver Ploeg & Lumpkin, P.A.'s time records is attached hereto as Exhibit "C." A wholly unredacted version cannot be provided to St. Paul at this time given the substantial likelihood of continuing litigation. If St. Paul needs clarification of any entry, Jablonski – without waiver of privileges or immunities – will provide reasonable detail.

[8] On June 17, 2009, in an effort to narrow the issues presented in this Motion, undersigned counsel emailed counsel for St. Paul, Kevin O'Brien, seeking St. Paul's agreement as to the reasonableness of Ver Ploeg & Lumpkin, P.A.'s hourly rates. On June 25, 2009, a list of Ver Ploeg & Lumpkin, P.A.'s current hourly rates was emailed to Mr. O'Brien. On June 29, 2009, St. Paul expressed its disagreement with the reasonableness of Ver Ploeg & Lumpkin, P.A.'s hourly rates. *See* June 17-25, 2009 email train, attached hereto as Exhibit "E."

during the relevant years in Ft. Myers and Lee County, Florida.[9]

### 2.    Hours Reasonably Expended

The next step in the computation of the lodestar is the ascertainment of reasonable hours. *Norman*, 836 F.2d at 1301 (*citing Hensley*). Excessive, redundant or otherwise unnecessary hours should be excluded from the amount claimed. *Id.* The verification and affidavit filed in support of this Motion confirm that Ver Ploeg & Lumpkin P.A.'s raw time records were reviewed and improper time was removed, including necessary time expended by individuals only tangentially involved with the litigation. In making these deletions, Jablonski erred on the side of caution, even though he may well have successfully argued that some or all of this time should have been retained under a *R.V.M.P. Corp.* analysis. *See R.V.M.P. Corp.*, 681 F. Supp. at 809 (awarding fees relating to time expended in connection with voluntarily dismissed counterclaims, as the investigation of these claims enabled the defendant to discover "evidence that would help him in the breach of contract claim"). Jablonski removed 113.40 hours as related solely to investigation of St. Paul's bad faith in other claims/cases and 838.60 hours as redundant or excessive in nature, or incurred by timekeepers with less than 50 hours totaling $228,157.00 (at current rates).

After deleting the time described above, the hours recorded, together with current rates, are reflected in the following chart.[10] Time incurred by individuals in grey has been removed from this fee application and is presented only for context.

---

[9] The skill of Ver Ploeg & Lumpkin, P.A. is also a consideration in determining a reasonable hourly rate. *Norman*, 836 F.2d at 1300; *accord Manshum Enterprises, Inc. v. National Business Info. Corp.*, *slip. op. avail.* at 2006 WL 2406563 at *3 (M.D. Fla. Aug. 18, 2006). As set forth in Mr. Boyle's affidavit and the curriculum vitae of undersigned counsel, the law firm of Ver Ploeg & Lumpkin, P.A. and its counsel concentrate in the specialized areas of insurance coverage and unfair claim handling which was necessary for Jablonski to prevail, and the lawyers within the firm are experienced practitioners in the type of litigation undertaken in this lawsuit. Curriculum vitae for the relevant timekeepers are attached for the Court's convenience at Exhibit "F."

[10] These figures reflect time billed from the date of engagement through June 26, 2009, at the firm's current hourly rates. *See American Charities for Reasonable Fundraising, Inc. v. Pinellas County*, 278 F. Supp. 2d 1301, 1312-

## TABLE 1: BREAKDOWN OF FEES TO SUPPORT BILLING STATEMENT
### (For Time from Inception – June 26, 2009)

| Initials | Timekeeper | Position | Hours Billed | Total Billed | Hours Removed | Hours Claimed | Hourly Rate | Total Claimed |
|---|---|---|---|---|---|---|---|---|
| BNV | Brenton Ver Ploeg | Partner | 8.20 | $4,510.00 | 8.20 | 00.00 | $550.00 | 00.00 |
| RHL | R. Hugh Lumpkin | Partner | 119.90 | $59,950.00 | 25.40 | 94.50 | $500.00 | $47,250.00 |
| JSM | Jason Mazer | Partner | 1511.80 | $604,720.00 | 80.00 | 1431.18 | $400.00 | $572,720.00 |
| MCM | Meghan Moore | Partner | 1934.90 | $580,470.00 | 226.80 | 1708.10 | $300.00 | $512,430.00 |
| CBT | Cayla Tenenbaum | Associate | 26.80 | $6,030.00 | 26.80 | 00.00 | $225.00 | 00.00 |
| JAL | Jennifer Latham | Associate | 5.40 | $1,161.00 | 5.40 | 00.00 | $215.00 | 00.00 |
| JLG | Jeffrey Greyber | Associate | 993.10 | $203,585.50 | 259.80 | 733.30 | $195.00 | $142,993.00 |
| MBW | Matthew Weaver | Associate | 116.60 | $13,899.00 | 48.80 | 67.80 | $205.00 | $13,899.00 |
| BSJ | Brian Jacobson | Associate | 48.70 | $9,740.00 | 48.70 | 00.00 | $200.00 | 00.00 |
| BCH | Benjamin Hassebrock | Associate | 11.70 | $2,281.50 | 11.70 | 00.00 | $195.00 | 00.00 |
| MRC | Maria Caldera | Associate | 9.90 | $1,930.50 | 9.90 | 00.00 | $195.00 | 00.00 |
| KMS | Kathleen Shaw | Paralegal | 1695.80 | $271,328.00 | 70.50 | 1625.30 | $160.00 | $260,048.00 |
| ASA | Ana Santa Ana | Paralegal | 18.80 | $3,008.00 | 18.80 | 00.00 | $160.00 | 00.00 |
| LMM | Linda M. Mulhall | Paralegal | 13.40 | $2,144.00 | 13.40 | 00.00 | $160.00 | 00.00 |
| HJP | Heather Pitofsky | Law Clerk | 39.60 | $6,336.00 | 39.60 | 00.00 | $160.00 | 00.00 |
| ABH | Ashley Hacker | Law Clerk | 6.40 | $960.00 | 6.40 | 00.00 | $150.00 | 00.00 |
| JG | Jonathan Gold | Law Clerk | 9.50 | $1,425.00 | 9.50 | 00.00 | $150.00 | 00.00 |
| ME | Madelein Espinosa | Para-Clerk | 16.50 | $1,567.50 | 16.50 | 00.00 | $ 95.00 | 00.00 |
| SMM | Suzanne Mullins | Para-Clerk | 25.80 | $2,451.00 | 25.80 | 00.00 | $ 95.00 | 00.00 |
| EP | Eli Pereza | Para-Clerk | 81.40 | $7,733.00 | 00.00 | 81.40 | $ 95.00 | $7,733.00 |
| Total | | | 6694.00 | $ 1,785,230.00 | 952.00 | 5741.58 | | $1,557,073.00 |

### i.    The Nature of This Litigation

This litigation essentially consisted of three phases. Phase one required Jablonski to defeat St. Paul's action for declaratory relief, including its attempts to divest Jablonski of a jury trial on the bad faith claim and defeat Admiralty jurisdiction. Jablonski was entirely successful in this phase, as confirmed by this Court's Orders dated May 5, 2008 [D.E. 68] and the December 1, 2008 Order [D.E. 184] granting Jablonski's entitlement to attorney's fees pursuant to Fla. Stat. § 627.428.

Phase two involved discovery on the statutory bad faith claim. In this regard, St. Paul's tactic was to obstruct and delay at all costs. Jablonski was required to file numerous motions to

---

1313 (M.D. Fla. 2003) (citing *Missouri v. Jenkins*, 491 U.S. 274, 283-284 (1989) and *Norman*, 836 F.2d at 1302 for the proposition that "[w]here there is a delay the court should take into account the time value of money and the effects of inflation and generally award compensation at current rates rather than at historic rates"); *see also R.V.M.P. Corp.*, 681 F. Supp. at 809 n. 1.

compel production of documents and to enforce compliance with court orders. Undersigned counsel was also required to take the Rule 30(b)(6) deposition in numerous installments because St. Paul either failed to timely produce relevant documents or simply did not provide knowledgeable witnesses.[11] To label this litigation contentious would be an understatement. In determining that attorney's fees should not be reduced in light of the highly contentious nature of the litigation that had taken place, the *Zunde* court succinctly stated that "[b]oth parties gave as well as they received and the resulting high cost of litigation should not come as a surprise to either party." *Id.* at *7. St. Paul "received" a lot only because it "gave" a lot more. Accordingly, "the resulting high cost of litigation should not come as a surprise" to St. Paul, and this Court should find that the time and labor expended by Jablonski was reasonable.[12]

Phase three included trial preparation and conduct of the bad faith trial. Particularly relevant in this regard was St. Paul's strenuous efforts to preclude the expert testimony of Gary Fye and Stephen Prater. Jablonski was required to respond to lengthy *Daubert* motions and, again, prevailed *in toto*. St. Paul also went to herculean efforts to remove from the jury's consideration evidence concerning its incentive compensation program, including evidence demonstrating that it rewards claim department personnel for lowering average claim payout. Jablonski was again successful, although the court refused to give a requested adverse inference

---

[11] Detailed recountings of this discovery gamesmanship can be found in the following motions: Motion to Compel St. Paul to Produce Documents in Response to Jablonski's First Request for Production [D.E. 49]; Motion to Compel St. Paul to Produce Documents in Response to Jablonski's Second Request for Production [D.E. 60]; Motion to Compel St. Paul's Compliance with Court's May 5, 2008 Order [D.E. 111]; Motion to Compel Compliance with Court's June 11, 2008 Order and for Sanctions [D.E. 114]; Motion for Hearing and for Entry of an Order Scheduling a Discovery Status Conference [D.E. 128]; Motion to Compel St. Paul to Produce Documents in Response to Jablonski's Third Request for Production [D.E. 153]; and Response in Opposition to Motion for Protective Order [D.E. 226].

[12] This case spanned over two years and 370 docket entries. This Court is not required to dissect the reasonableness of time expended by the undersigned law firm on an hour-by-hour basis. *See, e.g., Loranger v. Stierheim,* 10 F.3d 776, 783 (11th Cir. 1994) (agreeing with other federal circuits that "[w]hen faced with a massive fee application ... an hour-by-hour review is both impractical and a waste of judicial resources" (internal citations omitted)).

jury instruction due to St. Paul's spoliation of crucial performance evaluations for the relevant personnel that mysteriously went missing. After hearing this evidence at trial, the jury determined that St. Paul acted in bad faith, violated certain provisions of Florida's Unfair Insurance Trade Practices Act and assessed consequential damages. Although sought by Jablonski, the jury did not award punitive damages.

### ii.    Hours Contested By St. Paul

Despite Jablonski's good faith effort to ensure that only time reasonably incurred is charged to St. Paul and the fact that St. Paul's litigation conduct necessitated many of the hours expended by Jablonski's counsel, St. Paul's June 16th letter makes clear that it intends to contest certain categories of fees. St. Paul expresses the opinion that Jablonski is not entitled to attorneys' fees expended litigating the punitive damages claim or any fees incurred after St. Paul extended its ambiguous and unenforceable offer of judgment.

<u>This Court Should Not Reduce Jablonski's Fee Award Because His Claims For Consequential And Punitive Damages Require Overlapping Proof Of Bad Faith.</u>

It is well-established in Florida that a court should not reduce a fee award even where entirely distinct claims involve a common core of facts:

> In the event a party is entitled to an award of fees for only some of the claims involved in the litigation, i.e., because a statute or contract authorizes fees for a particular claim but not others, the trial court must evaluate the relationship between the claims and **"where the claims involve a 'common core' of facts and are based on 'related legal theories,' a full fee may be awarded *unless it can be shown that the attorneys spent a separate and distinct amount of time on counts as to which no attorney's fees were sought [*or were authorized*].*"** *Anglia Jacs & Co. v. Dubin*, 830 So. 2d 169, 172 (Fla. 4th DCA 2002) (emphasis added); *see also Caplan v. 1616 E. Sunrise Motors, Inc.*, 522 So. 2d 920, 922 (Fla. 3d DCA 1988)...

*Chodorow v. Moore*, 947 So. 2d 577, 579 (Fla. 4th DCA 2007).

Unlike *Chodorow*, where the terms of the subject contract expressly established which party would be held accountable for attorney's fees, this case is not subject to a statutory or

contractual provision "authoriz[ing] fees for a particular claim *but not others*." Here, Fla. Stat. § 624.155(4) requires only an adverse adjudication against St. Paul before Jablonski becomes entitled to his reasonable attorneys' fees. Neither the language nor purpose of this consumer protection statute, enacted to discourage unfair insurer conduct like that visited upon Jablonski, suggest that this Court should engage in the time consuming task of parsing out fees incurred litigating any discrete aspects of an overall victorious suit.

Such a task would nevertheless prove impossible in this case because Jablonski's claims for consequential and punitive damages required him to demonstrate that the carrier acted in bad faith and violated certain provisions of §624.155. Florida law is clear that the total amount of attorney's fees owed to a prevailing litigant "should not be reduced .... [where] the successful and unsuccessful claims ... cannot be separated." *R.V.M.P. Corp*, 681 F. Supp. at 809. The *R.V.M.P. Corp.* reasoned that:

> [t]he *Rowe* court emphasized that *both* the investigation and prosecution of the unsuccessful claims needed to be separated from those successful claims in order to exclude the time spent on the unsuccessful claims from the overall hourly calculation. *Rowe* 472 So. 2d at 1151. Although the defendant voluntarily dismissed two of the counterclaims, the time expended for these claims should be included in the reasonable number of hours expended. In essence, this was a breach of a fire insurance contract case. The counterclaims that the defendant voluntarily dismissed were for bad faith and fraud. In its investigation of the bad faith and fraud claims, the defendant necessarily discovered evidence that would help him in the breach of contract claim. Thus, while the prosecution of these claims is easily separated, the investigation aspects are not and, thus, *both* requirements of the *Rowe* analysis are not satisfied for separation here.

*Id.* at 809 (emphasis added); *see also Maltzer v. Provident Life and Accident Ins. Co.*, 843 F. Supp. 692, 695 (M.D. Fla. 1993) (refusing to disallow time associated with bad faith and fraud counts that were never even asserted, and citing *R.V.M.P. Corp.* with approval). St. Paul would have this Court parse an even finer line between the types of damages sought to remedy insurer bad faith than the distinction between a breach of contract and bad faith action that this Court

and the Southern District refused to draw in *Maltzer* and *R.V.M.P. Corp.* This Court should again decline that invitation.

Jablonski's investigation of the conduct which gave rise to St. Paul's liability for consequential damages for insurer bad faith was, moreover, inextricably intertwined with that required to recover punitive damages. Florida's federal courts have already recognized that the investigation of a Fla. Stat. § 626.9541(1)(i) cause of action is inextricably intertwined with the investigation of a Fla. Stat. § 624.155(1)(b)(1) cause of action. *See, e.g., Nowak v. Lexington Ins. Co.*, 2006 WL 3613766 at *2 (S.D. Fla. June 12, 2006) (finding that "[a]though partial summary judgment ha[d] been entered against [the insured] with respect to an independent claim for relief based on the violations of Fla. Stat. § 626.9541(1)(i), the above matters may lead to relevant evidence regarding the remaining claim which asserts a violation of [Fla. Stat. §] 624.155(1)(b)(1)"). Jablonski, of course, proved at trial that St. Paul violated Fla. Stat. § 624.155(1)(b)1 by not attempting to settle claims when, <u>under all the circumstances</u>, it could and should have done so, <u>had it acted fairly and honestly</u> toward its insured and with due regard for his interests (emphasis supplied). The jury also determined that St. Paul violated § 626.9541(1)(i) by misrepresenting pertinent facts or insurance policy provisions relating to the coverage at issue and failing to clearly explain the nature of the requested information and the reasons why such information is necessary. Finally, the jury concluded that Jablonski was damaged by St. Paul's bad faith and awarded consequential damages flowing from these statutory violations.

The only additional requirement for the imposition of punitive damages is a showing that these statutory violations occur with such frequency so as to indicate a general business practice and that they were committed in reckless disregard for Jablonski's rights. The only time

expended that can even arguably apply <u>only</u> to the punitive damages claim is that incurred investigating "other similar claim" misconduct perpetrated by St. Paul against other policyholders. But Jablonski already voluntarily excluded such time entries. St. Paul also advised the Court during discovery briefing that such "other claims" evidence is irrelevant to Jablonski's claims [D.E. 166] and, incredibly, asks this Court to impose Section 1927 sanctions against undersigned counsel for their failure to present exactly that evidence at trial. In contrast, Jablonski has consistently argued that a corporate admission that the manner in which the carrier handed Jablonski's claim is (1) its standard operating procedure and (2) perfectly consistent with company policy, suffices. And those inquiries took very limited time at the depositions of St. Paul's representatives, during which they all agreed that Jablonski's claim was investigated, adjusted and resisted in full compliance with endorsed company policy, that nobody associated with the claim was even criticized and that nothing was done wrong. The jury disagreed. Because of this inextricable intertwinement, it would be inappropriate for this Court to further reduce the amount of attorney's fees owed to Jablonski.[13]

Florida courts have even more generally determined that the investigation and presentation of evidence for a compensatory damages claim is often the same as the investigation and presentation of evidence for a punitive damages claim, *i.e.* the investigation associated with the punitive damages aspect of a lawsuit is often inextricably intertwined with other portions of a lawsuit. *See, e.g., Hetrick v. Ideal Image Development Corp.*, 2009 WL 33625 (M.D. Fla. Jan. 5, 2009) (finding that where a claim for punitive damages arises out of the same body of facts as the rest of the lawsuit, and where such facts are "infected with malice, oppression, or other like circumstances of oppression[,]" a punitive damages claim does not have to be specifically pled in

---

[13] Undersigned counsel already deleted all time entries that related solely to investigating St. Paul's bad faith conduct vis-à-vis other policyholders. Those deleted entries total 113.40 hours.

order for a jury to consider awarding punitive damages because the claim it is not independent from the portions of the lawsuit which were pled).

<u>Jablonski Is Entitled To Recover Attorneys' Fees Incurred After St. Paul Extended Its Unenforceable Offer Of Judgment.</u>

Jablonski has explained the myriad reasons that St. Paul's offer of judgment is unenforceable in response to St. Paul's motion for entitlement to attorneys' fees, which will be filed shortly.[14] Briefly restated, however, ST. Paul's statutory offer of judgment (1) is invalid because it purports to exclude derivative claims for attorneys' fees; (2) cannot exceed the judgment obtained by 25%; (3) is hopelessly ambiguous and violates Rule 1.442's particularity requirement; and (4) was not made in good faith.[15]

The Eleventh Circuit has held that an offer expressly excluding attorneys' fees is invalid under Florida law because the offer fails to state the total amount of the proposal, as required by Rule 1.442. *McMahan*, 311 F.3d at 1082 (citing *State Farm Life Ins. Co. v. Bass*, 605 So. 2d 908, 910 (Fla. 3d DCA 1992)). The Florida Supreme Court also endorsed the Third District's decision in *Bass* and reiterated that "[A]ny offer of settlement *shall be construed to include* all damages, attorneys fees, taxable costs and prejudgment interest which would be included in a final judgment if the final judgment was entered on the date of the offer of settlement." *White v. Steak & Ale of Florida*, 816 So.2d 546, 551 (Fla. 2002) (quoting *Danis Indrs. Corp. v. Ground Improvement Techniques, Inc.*, 645 So.2d 420, 421-22 (Fla. 1994)) (emphasis supplied).[16] The Supreme Court sensibly recognized that in order to determine both the amount of the offer and

---

[14] Jablonski will accordingly not belabor the point here and respectfully refers the court to his response. A copy of St. Paul's January 23, 2009 Offer of Judgment is attached hereto as Exhibit "G."
[15] Since the first two grounds clearly render the offer of judgment unenforceable, Jablonski leaves discussion of the latter two grounds for his response to St. Paul's fee motion.
[16] St. Paul's counsel does not even bother to mention this binding Eleventh Circuit and Florida Supreme Court precedent that is directly adverse to its position, as required by Rule 4-3.3(a)(3) of the Florida Rules of Professional Conduct.

whether to accept the offer, "the party necessarily must evalute not only the amount of the potential jury verdict, but also any taxable costs, attorneys' fees, and prejudgment interest to which the party would be entitled if the trial court entered the judgment at the time of the offer or demand." *White*, 816 So.2d at 550. The Court's reasoning applies with even greater force where, as here, an insurance company purports to exclude from its offer statutory attorneys' fees incurred during the preceding nineteen (19) months of litigation (as opposed to only taxable costs). St. Paul's offer is accordingly invalid and unenforceable due to its attempt to exclude Jablonski's derivative claims for attorneys fees pursuant to Fla. Stat. §§ 627.428 and 624.155.

A defendant is only entitled to attorneys' fees under section 768.79 when "the 'judgment obtained' by the plaintiff is at least 25 percent less than the amount of the offer." FLA. STAT. § 768.79(6)(a). The Florida Supreme Court has expressly held that "the 'judgment obtained' pursuant to section 768.79 includes the net judgment for damages and any attorneys' fees and taxable costs that could have been included in a final judgment if such final judgment was entered on the date of the offer." *White*, 816 So. 2d 546 (Fla. 2002). Pre-offer costs and attorneys' fees must be added to the amount of the net judgment even where the defendant attempts to exclude costs or fees from its offer of judgment. *Id.*; *Am. Honda Motor Co. v. Fontana*, 2007 WL 1427554, *6-8 (Fla. Cir. Ct. May 7, 2007) (explaining that a defendant who elects to exclude fees acts at its own peril because the fees incurred as of the date of the offer must still be added to the plaintiff's final judgment for purposes of determining whether the defendant's offer meets the 25% threshold of section 768.79). St. Paul's motion simply ignores this binding precedent, and its offer falls far short of the statutory threshold.

In order for St. Paul's offer of judgment to be effective, the judgment obtained must be 25% less than its $400,000 offer, or **$300,000**. This Court's Amended Final Judgment awards

**$128,614.04** to Jablonski, exclusive of costs and attorneys' fees. [D.E. 382.] As this Court knows, St. Paul initiated this case on June 14, 2007. By January 23, 2009, the date St. Paul extended its offer, Jablonski had already incurred approximately **$64,804.64** in taxable costs and **$992,565.00** in attorneys' fees.[17] Adding these costs and fees to the amended judgment, as required by Florida law, brings the total judgment obtained to **$1,187,251.50,** well in excess of the statutory threshold.

St. Paul's offer of judgment also conspicuously ignores this Court's December 1, 2008 Order granting Jablonski's entitlement to attorneys' fees pursuant to Fla. Stat. § 627.428 because he prevailed in the declaratory judgment action, defeated admiralty jurisdiction, secured a right to jury trial and a judicial declaration that his statutory bad faith claim was indeed ripe. [D.E. 184]. As of May 5, 2008, the date this Court granted Jablonski's motion for judgment on the pleadings and entered its omnibus Order [D.E. 68]. Jablonski had already been forced to incur $258,784.50 in fees and $2,112.58 in taxable costs.[18] So, even adding only the fees to which Jablonski had already been granted entitlement, the net judgment totals $389,511.12, easily defeating St. Paul's offer of judgment.

Like the Florida Supreme Court, this Court has also recognized that "[a]n offer of judgment ought to fairly account for the risks of litigation, the costs and fees at stake, and the other components of uncertainty that sophisticated persons assay when deciding whether to settle." *Stouffer Hotel Co. v. Ground Improvement Techniques, Inc.*, 944 F. Supp. 874, 875 (M.D. Fla. 1995). St. Paul nevertheless elected to ignore Jablonski's derivative fee claims pursuant to Fla. Stat. §§ 627.428 and 624.155(4) and exclude them from its offer at its own

---

[17] St. Paul was well aware that the attorneys' fees and costs incurred far exceeded its offer. *See* letter dated January 13, 2009, from Jason Mazer to Chris Martin attached as Exhibit "H."

[18] Jablonski's fee expert testified that $258,784.50 were reasonably incurred through that date.

peril; Florida law clearly requires that such fees and costs be included in determining the amount of the judgment obtained under section 768.79. Although the final amount of attorneys' fees and costs to be awarded Jablonski has yet to be determined by this Court, Jablonski's fee expert has testified that undersigned counsel reasonably incurred 3623.70 hours (or $1,251,349.50) in attorneys fees as of the date of St. Paul's offer of judgment. *See* Exhibit "D." Jablonski is accordingly entitled to reasonable fees incurred after the date St. Paul served its insufficient and unenforceable offer of judgment.

Jablonski May Recover Attorneys Fees For Litigating Entitlement To Attorney's Fees *vs.* Amount Of Attorney's Fees Owed

St. Paul attempts to disguise its quarrel as a dispute over the "amount" of attorney's fees owed to Jablonski rather than a disagreement with Jablonski's "entitlement" to attorneys' fees incurred after its offer of judgment and in order to investigate the full measure of St. Paul's bad faith. St. Paul urges this Court to adopt its misclassification so that it will not be held responsible for the attorney's fees expended by Jablonski litigating his entitlement to these fees. St. Paul is not only attempting to prevent Jablonski from recovering a mere percentage ("amount") of the fees incurred on the ground that they were unreasonable, but is also instead attempting to bar Jablonski from recovering all such fees ("entitlement"). This is particularly true with respect to St. Paul's contention that Jablonski is entitled to no fees incurred after the date of its unenforceable offer of judgment. Jablonski accordingly requests that this Court recognize St. Paul's argument for what it is (a dispute over "entitlement") rather than what St. Paul labels it (a dispute over "amount") in order to escape payment for the time and expense associated with this motion.[19]

---

[19] Jablonski thus claims an additional $16,179.25 in time expended preparing this Motion and the related memoranda, affidavits and exhibits.

### iii. The Results Achieved And The True Measurement Of Jablonski's Success

While Jablonski must necessarily await St. Paul's response to this motion in order to understand the carrier's additional objections, if any, to his fee request, we briefly write further to explain the purpose of this consumer protection litigation. What perhaps matters least in determining whether Jablonski's $126,000 jury verdict was a "success" is the actual monetary value of the award because the result vindicates important rights, discourages corporate misconduct, and provides access to competent counsel. Indeed, multiple federal courts have recognized that:

> [t]he 'degree of success obtained' is the most important consideration when the court determines what is a reasonable fee award. *Hensley,* 461 U.S. at 436; *Tolentino v. Friedman,* 46 F.3d 645, 652 (7th Cir. 1995). [But] '[s]uccess is not measured only by the amount of recovery but also in terms of the significance of the legal issue on which the plaintiff prevailed and the public purpose the litigation served.' *Morales v. City of San Rafael,* 96 F.3d 359, 365, *as amended on denial of rehearing and rehearing en banc,* 108 F.3d 981 (9th Cir. 1997). The amount of attorney's fees requested need not be proportionate to the settlement or judgment amount, ... as that would defeat the public benefit advanced by the litigation. *Dunning v. Simmons Airlines, Inc.,* 62 F.3d 863, 873 n. 13 (7th Cir. 1995).

*Riter v. Moss & Bloomberg, Ltd.,* 2000 WL 1433867 at *2 (N.D. Ill. 2000); *see also Owens v. Howe,* 365 F. Supp. 2d 942, 947 (N.D. Ind. 2005) (same); *cf. Castel v. Advantis Real Estate Services Co.,* 2008 WL 3348774 at *5 (E.D. Va. Aug. 8, 2008) ("large awards of attorney's fees ... [are permissible even] after a vindication of plaintiff's rights through relatively small recoveries.[20]

---

[20] *See also, Rivera v. Riverside,* 763 F.2d 1580, 1581-1583 (9th Cir. 1985) (awarding $245,456.25 in fees for obtaining a $33,350.00 judgment); *Copeland v. Marshall,* 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc) (awarding $160,000 in fees for obtaining a $33,000 judgment); *Morris v. Eversley,* 343 F. Supp. 2d 234, 248 (S.D.N.Y. 2004) (awarding reasonable attorney's fees of $154,900 where plaintiff was awarded $16,000 in compensatory and punitive damages)").

This rationale is underscored by the judicial system's desire to provide all litigants with competent counsel, even in situations where the merits do not ensure stunning economic results. *See Bell*, 734 So.2d at 411; *see also Castel*, 2008 WL 3348774 at *5 (E.D. Va. Aug. 8, 2008) (recognizing that the purpose of awarding attorney's fees is often "'to ensure effective access to the judicial process'" (citing *Fegley v. Higgins*, 19 F.3d 1126 (6th Cir. 1994)). And this holds particularly true with respect to insurance coverage and bad faith cases. *Bell*, 734 So.2d at 410, n. 10 (recognizing that the public purpose behind § 627.428 is to "discourage insurance companies from contesting valid claims, and to reimburse insureds for their attorney's fees incurred when they must enforce in court their contract with the insurance company").

Jablonski, quite simply, prevailed on St. Paul's declaratory action and in his subsequent bad faith claim against the carrier. While the jury's award of consequential damages advanced his own economic interests, Jablonski's success under this consumer protection statute has broader implications. Indeed, § 624.155 deputizes policyholders to serve as private attorney generals in ferreting out and regulating insurer misconduct in the State of Florida. Jablonski's success in this case, in concert with an appropriate fee and cost award may convince St. Paul to change the way it does business, thereby minimizing the chance that future Florida claimants are similarly mistreated. Jablonski's "success" including his recovery post-retention of Ver Ploeg & Lumpkin, P.A. actually totals $389,898.04, and was therefore a "success" in amount as well.[21]

Jablonski should accordingly be awarded a lodestar amount of $258,784.50 for those attorney's fees incurred defeating St. Paul's declaratory action, and successfully prosecuting Jablonski's bad faith action. We next demonstrate that contingency risk multiplier of 2.0 is appropriate.

---

[21] This figure includes the total amount of the appraisal award ultimately paid (less the $80,000 earlier partial payment) plus the amended final judgment, exclusive of costs and fees.

**C.    The Application Of A Contingency Risk Multiplier**

Once the lodestar figure is determined, a court may adjust the fee based on a "contingency risk" factor. *Rowe*, *supra*, 472 So. 2d at 1151. The Supreme Court of Florida clarified the circumstances under which a multiplier may be applied in *Standard Guar. Ins. Co. v. Quanstrom*, 555 So. 2d 828 (Fla. 1990). The *Quanstrom* court divided contingency fee cases into three categories, of which the instant action falls into the second: "tort and contract claims." *Id.* at 833. In such cases,

> The trial court should consider the following factors in determining whether a multiplier is necessary: (1) whether the relevant market requires a contingent fee multiplier to obtain competent counsel; (2) whether the attorney was able to mitigate the risk of non-payment in any way; and (3) whether any of the factors set forth in *Rowe* are applicable, especially the amount involved, the results obtained, and the type of fee arrangement between the attorney and his client.

*Id.* at 834.

> Under the *Quanstrom* guidelines, the multiplier to be applied is determined as follows:

> If the trial court determines that success was more likely than not at the outset, it may apply a multiplier of 1 to 1.5; if the trial court determines that the likelihood of success was approximately even at the outset, it may apply a multiplier of 1.5 to 2.0; and if the trial court determines that success was unlikely at the outset of the case, it may apply a multiplier of 2.0 to 2.5.

*Id.*

After determining the lodestar amount by multiplying the hours reasonably expended by a reasonable hourly rate, the court then considers the *Quanstrom* factors to decide whether the application of a contingency risk multiplier is appropriate. The court applies *Quanstrom* to determine the range of the multiplier to be applied, and based on a totality of the circumstances, chooses a point within that range. We now turn to the amount of the multiplier that should be awarded in this case.

### 1. A Contingency Risk Multiplier Should Be Awarded In This Case

Florida law has developed considerably since *Quanstrom* in determining the availability of a multiplier. Presently, the primary reason for the application of a contingency risk multiplier is to provide access to competent counsel in cases that would not otherwise be economically feasible to bring on a non-contingent fee basis. *Bell*, 734 So. 2d at 411. In *Bell*, the Supreme Court of Florida reemphasized what it had recognized in *Rowe*, that:

> ... the availability of attorneys' fees would have the effect of encouraging plaintiffs to bring meritorious claims that would not otherwise be economically feasible to bring on a non-contingent fee basis.
> * * *
> The importance of this policy consideration is highlighted by the fact that the very first factor listed in *Quanstrom* for courts to consider in determining if a multiplier should be utilized in tort and contract cases is 'whether the relevant market requires a contingency fee multiplier *to obtain competent counsel.*'
> * * *
> In this way, the availability of the multiplier levels the playing field between parties with unequal abilities to secure legal representation.

*Bell*, 734 So. 2d at 411 (internal citations omitted); *see also Sarkis v. Allstate Ins. Co.*, 863 So. 2d 210, 222 (Fla. 2003) (noting that in *Quanstrom* and *Rowe* "we authorized the use of a multiplier to promote access to courts by encouraging lawyers to undertake representation at the inception of certain cases"). And this holds particularly true in situations where a "lone individual" is pitted against a "large business entity." *See Zunde*, 2000 WL 1763843 at *8.

Federal district courts in Florida have reached similar conclusions. For example, in *Maltzer*, 843 F. Supp. 692, this Court analyzed the "blueprint derived from the *Rowe* and *Quanstrom* decisions" and found that certain factors from *Rowe* applied lead to the conclusion "the question is not whether [the insured's counsel] is entitled to a lodestar multiplier but rather the amount of the same." *Id.* at 698 (holding that a multiplier of 2.5 was appropriate).[22] The

---

[22] As the *Maltzer* court notes with regard to the insured's counsel's application for fees, the *Quanstrom* court reduced the maximum multiplier available under Florida law from 3.0 to 2.5.

*Maltzer* court based its decision, at least in part, on the fact that "the several defenses elected by the defendant presaged protracted discovery proceedings and a hard fought trial." *Id.*

In this case, Jablonski is entitled to a contingency risk multiplier, largely for the same reasons found in *Quanstrom*, *Maltzer* and *Bell*. The first two elements set forth in *Quanstrom* are easily met: it is undisputed that the relevant market commands that insurance litigation on behalf of individual policyholders be taken on a contingent basis,[23] and it is equally clear that the only means by which the undersigned could mitigate the risk of nonpayment would be to collect fees from Jablonski, who had already been damaged by St. Paul's unfair conduct.

Additionally, many of the factors enunciated in *Rowe* apply to the case at bar,[24] including the fact that the fee was contingent (#8); the predictably tenacious defense mounted by St. Paul – doubtless due to its exposure for extra-contractual damages – guaranteed from the outset that extensive time and labor would be involved (#1); as a result of that tenacious defense and manifest intractability during litigation, Jablonski's counsel was forced to spend numerous hours on motions to compel discovery and compliance with court orders and prove elements of his claim that could – and reasonably should – have been conceded by St. Paul, precluding Jablonski's counsel from taking on other employment (#2); the fees requested are within the

---

[23] *See* Boyle affidavit at page 20.

[24] The *Rowe* Court, 472 So. 2d at 1150, set forth the following factors:

(1) The time and labor required, the novelty and difficulty of the question involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.

range of those customarily charged in the locality for similar legal services (#3); and Jablonski's counsel are specialists in the area of insurance litigation (#7).[25]

### 2. A Multiplier of 2.0 Is Appropriate

Consistent with the opinion of Mark Boyle, Esq., *see* Exhibit "D," Jablonski respectfully suggests that a multiplier of 2.0 is appropriate in this case. If this Court appropriately applies a contingency risk multiplier of 2.0 to the lodestar amount reasonably sought, $1,557,073.00, Jablonski will be owed $3,114,146.00 in attorney's fees.

### II. Jablonski Should Be Awarded All Reasonable Costs Incurred

Florida's bad faith statute provides that, upon adverse adjudication, the insurer "shall be liable for damages, together with court costs and reasonable attorney's fees incurred by the plaintiff." FLA. STAT. § 624.155(4). Although it is unclear whether this statutory reference to "court costs" allows for recovery of all costs or is limited to taxable costs, rules of statutory interpretation as well as the purpose of the bad faith statute mandate a finding that Jablonski should be entitled to all costs expended in the prosecution (and defense) of this action.

The Florida Supreme Court has previously interpreted the statutory term "court costs" to mean all costs incurred. *Jones v. ETS of New Orleans, Inc.*, 793 So. 2d 912 (Fla. 2001). Although the workers' compensation lien statute at issue in *Jones* included some expansive language that does not appear in Florida's bad faith statute, the court's rationale demonstrates that a similar interpretation is appropriate here. Basic tenets of statutory interpretation provide that a statute should be interpreted to give effect to all of its parts within an entire statutory scheme. *Id.* at 914-15. The Florida legislature's use of the term "court costs" is rendered meaningless if it is read to merely import the definition of "taxable costs" from other applicable

---

[25] *See* Boyle affidavit at page 15.

statutory provisions. *See* FLA. STAT. § 57.041; FED.R.CIV.P. 54(d)(1). Moreover, such a limited interpretation would leave a successful policyholder with a potentially massive bill for nontaxable costs including expert witness fees, attorney travel, trial preparation costs nor otherwise taxable, contrary to the purpose of Florida's bad faith statute. *See, e.g., Inacio v. State Farm Fire & Cas. Co.*, 550 So. 2d 92, 96 n. 4 (Fla. 1st DCA 1989) (interpretation that "preclude[s] the insured from obtaining legal representation to enforce his rights against the insurer" is contrary to purpose of sections 624.155 and 627.428). Statutes in derogation of common law, such as the fee-shifting provision of Section 624.155, must be strictly construed, "and if any doubt exists as to the legislature's intent, the doubt should be interpreted in favor of the injured party." *McGraw v. R & R Inv., Ltd.*, 877 So. 2d 886, 890 (Fla. 1st DCA 2004). Jablonski, the injured party, should be entitled to the more expansive definition of "court costs," and should recover all costs incurred in this litigation. Such costs will be provided to the court upon entitlement to same.

## III.    Taxable Costs

The issue of taxable costs, however, "is not determined by state law in a diversity case." *Zunde*, 2000 WL 1763843 at *1 (internal citations omitted). *See also* 28 U.S.C. §1920.

An award of costs is appropriate at this time pursuant to this Court's December 1, 2008 Order and July 9, 2009 Final Judgment. Undersigned counsel verifies that the charges itemized in Jablonski's Bill of Taxable Costs, attached hereto as Exhibit "I," were necessarily incurred by and charged to Jablonski in the prosecution of this claim. The costs listed in Exhibit "I" are therefore taxable in accordance with 28 U.S.C §§ 1920 and 1924. Copies made by outside vendors were charged at the vendor's stated rates,[26] while copies made by the undersigned's firm

---

[26] Copies of the invoices underlying Jablonski's costs will be provided upon request by the Court or St. Paul.

were charged at $.15 per page. Accordingly, the Court should enter an Order awarding said costs, in the amount of $90,909.31.

## CONCLUSION

For the reasons set forth herein, Jablonski respectfully requests this Court enter an Order awarding him a lodestar amount of $1,557.073 for Ver Ploeg & Lumpkin, P.A.'s services; applying a contingency risk multiplier of 2.0 for a total attorney's fee award of $3,114,146.00, awarding taxable costs in the amount of $90,909.31, with interest thereon from the date of the Final Judgment, post-judgment interest on all amounts awarded; and any further relief which this Court deems equitable, just and proper.[27]

Respectfully submitted,

**Ver Ploeg & Lumpkin, P.A.**

s/s Jason S. Mazer
**Jason S. Mazer, Esquire**
Florida Bar No. 0149871
**Meghan C. Moore, Esquire**
Florida Bar No. 0668958
**Jeffrey L. Greyber, Esquire**
Florida Bar No. 41103
100 S.E. 2nd Street, Thirtieth Floor
Miami, Florida 33131
Telephone: (305) 577-3996
Facsimile: (305) 577-3558
*Attorneys for Plaintiff, Edward J. Jablonski, Jr.*

---

[27] Undersigned counsel has not requested prejudgment interest on the attorneys' fees awarded because the fee request contemplates current hourly rates. If Jablonski is not awarded reasonable fees based upon counsel's current rates, he respectfully requests an award of interest at the statutory rate from the date Jablonski became entitled to fees, i.e., the May 5, 2008 Order and the June 4, 2009 jury verdict. *Quality Engineered Installation Inc. v. Higley South, Inc.*, 670 So. 2d 929, 930-931 (Fla. 1996) ("interest accrues from the date the entitlement to attorney's fees is fixed through agreement, arbitration award or court determination, even though the amount of the award has not yet been determined.").

## VERIFICATION

BEFORE ME, the undersigned authority, personally appeared Jason S. Mazer who, being duly sworn, deposes and states that he has read the foregoing Motion and the factual representations contained therein are true and correct.

s/s Jason S. Mazer

**Jason S. Mazer**

WITNESS MY HAND AND SEAL in this County and State last before said this 18th day of August, 2009.

NOTARY PUBLIC (Signature)

Lissette M. Rodriguez

Print, Type or Stamp Commissioned
Name of Notary Public

Personally known __X__ or Produced Identification ___
Type of Identification produced:_____
DID Take Oath _____ or DID NOT Take Oath _____

## CERTIFICATION OF GOOD FAITH EFFORT TO CONFER

Pursuant to Local Rule 3.01(g), the undersigned counsel certifies that they have conferred with opposing counsel in a good faith effort to resolve the issues raised in this Motion, but have been unable to reach a resolution.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 18, 2009 I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in this manner specified, *via* transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

s/s Jason S. Mazer
**Jason S. Mazer, Esquire**

## SERVICE LIST
## CASE NO.: 2:07-cv-00386-JES-SPC

**Christopher W. Martin, Esquire**
Texas Bar No. 13057620
martin@mdjwlaw.com
**Rebecca A. Moore, Esquire**
Texas Bar No. 24031701
moore@mdjwlaw.com
**Todd M. Lonergan, Esquire**
Texas Bar No. 12513700
lonergan@mdjwlaw.com
MARTIN, DISIERE, JEFFERSON & WISDOM, LLP
808 Travis Street, Suite 1800
Houston, Texas 77002
Telephone: (713) 632-1701
Facsimile: (713) 222-0101
*Counsel for Defendant, St. Paul and Marine Insurance Company*

**Matthew M. Litsky, Esquire**
Florida Bar No. 0992194
litskym@phelps.com
**Kevin M. O'Brien, Esquire**
Florida Bar No. 0496111
obrienk@phelps.com
PHELPS DUNBAR, LLP
100 S. Ashley Drive, Suite 1900
Tampa, Florida 33602
Telephone: (813) 472-7584
Facsimile: (813) 472-7570
*Co-Counsel for Defendant, St. Paul and Marine Insurance Company*

**Ronald D. Getchey, Esquire**
California Bar No. 157213
rgetchey@luce.com
LUCE, FORWARD, HAMILTON & SCRIPPS, LLP
600 West Broadway
Suite 2600
San Diego, California 92101-3372
Telephone: (619) 699-2445
Facsimile: (619) 232-8311
*Pro Hac Vice, Counsel for Defendant, St. Paul and Marine Insurance Company*

**Jason S. Mazer, Esquire**
Florida Bar No. 0149871
jmazer@vpl-law.com
**Meghan C. Moore, Esquire**
Florida Bar No. 0668958
mmoore@vpl-law.com
**Jeffrey L. Greyber, Esquire**
Florida Bar No. 41103
jgreyber@vpl-law.com
VER PLOEG & LUMPKIN, P.A.
100 S.E. 2nd Street
Thirtieth Floor
Miami, Florida 33131
Telephone: (305) 577-3996
Facsimile: (305) 577-3558
*Counsel for Plaintiff, Edward J. Jablonski, Jr.*

79041_1
J002.100