IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| EDWARD J. JABLONSKI, JR., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ST. PAUL FIRE AND MARINE ) <br> INSURANCE COMPANY, ) <br> ) <br> Defendant. ) | Civil Action No. 2:07-cv-00386 |

## MEMORANDUM OPINION

Plaintiff Edward J. Jablonski, Jr. ("Jablonski") and Defendant St. Paul Fire and Marine Insurance Company ("St. Paul") have filed cross-motions for attorneys' fees. St. Paul claims entitlement to a portion of its attorneys' fees pursuant to both 28 U.S.C. § 1927 and Fla. Stat. § 768.79 (Doc. No. 381). Jablonski seeks attorneys' fees under the auspices of Fla. Stat. § 624.155 (Doc. No. 391). For the reasons discussed below, St. Paul's Motion for Entitlement to Attorneys' Fees will be denied and Jablonski's Verified Motion for Attorneys' Fees and Costs will be granted in part.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On January 23, 2009, St. Paul served upon Jablonski an "Offer of Judgment/Proposal for Settlement to Plaintiff Pursuant to § 768.79, Florida Statutes, and Florida Rule of Civil Procedure 1.442" (Doc. No. 396, Ex. D), offering $400,000 to settle "any and all claims, except the claims for attorney's fees and punitive damages, that were made, or that could have been made, by Jablonski against St. Paul" in this action. (*Id.* ¶ 3.). The Offer of Judgment was accompanied by a proposed "Release and Settlement Agreement," execution of which was one of the express conditions upon which the Offer of Judgment was contingent. (*Id.*, ¶ 4(b) and Ex. A.) Jablonski, through his counsel, subsequently requested further clarification of the terms of the Release and Settlement Agreement, but St. Paul, insisting that the terms of its proposal were clear, declined to provide additional clarification. Jablonski did not accept the offer. (Doc. No. 396, Ex. E.)

On June 4, 2009, a jury returned a verdict in favor of Jablonski in the amount of $126,000 in compensatory damages. Specifically, the jury found that St. Paul had acted in bad faith in the settlement

of Jablonski's insurance claim in violation of Fla. Stat. § 625.155(1)(b), had misrepresented pertinent facts or insurance policy provisions relating to the coverage at issue, and had failed to explain the nature of requested information, in violation of Fla. Stat. § 626.9541(1)(i). The jury was instructed that, in order to prove St. Paul committed statutory violations with such frequency as to indicate a general business practice, a prerequisite for punitive damages, Jablonski must provide evidence of violations beyond his own claim. The jury found Jablonski had not met this burden and, as a result, did not award punitive damages.

## II.     ANALYSIS AND DISCUSSION

The parties have now filed—and exhaustively briefed—their dueling motions for attorneys' fees. This memorandum will first address St. Paul's request for attorneys' fees before turning to Jablonski's request.

### A.     St. Paul Is Not Entitled To Attorneys' Fees under Fla. Stat. § 768.79.

St. Paul claims that it is entitled to recover a portion of its attorneys' fees because: (1) Jablonski, after rejecting St. Paul's Offer of Judgment under Fla. Stat. § 768.79, failed to obtain a jury award that was greater than 75% of the settlement offer; or, alternatively, (2) Jablonski's claim for punitive damages was frivolous as defined by 28 U.S.C. § 1927. Jablonski counters that St. Paul's Offer of Judgment does not fall within the purview of Fla. Stat. § 768.79 because it: (1) attempted to settle less than all of the claims; (2) is ambiguous; and (3) was made in bad faith. Alternatively, Jablonski argues that, regardless of the offer's validity, the more-than-75% threshold of $300,000 was met in any case once attorneys' fees are considered. In addition, Jablonski defends his claim for punitive damages, maintaining that, although he did not prevail on that claim, it was not at any time a frivolous claim.

As set forth below, the Court finds that, although St. Paul's offer is not rendered invalid by reason of the fact that it expressly indicated it was not intended to settle Jablonski's claim for attorneys' fees, it is fatally ambiguous. Moreover, even if it were not, once attorneys' fees and costs are taken into account, the judgment entered in favor of Jablonski more than meets the statutory threshold amount.

#### 1.     *An Offer of Judgment May Attempt to Settle Only Some of the Claims at Issue.*

Section 768.79, Florida Statutes (2005), provides, in pertinent part, that:

> In any civil action for damages filed in the courts of this state, if a defendant files an offer of judgment which is not accepted by the plaintiff within 30 days, the defendant shall be entitled to


> recover reasonable costs and attorney's fees incurred by her or him . . . from the date of filing of the offer if the judgment is one of no liability or the judgment obtained by the plaintiff is at least 25 percent less than such offer, and the court shall set off such costs and attorney's fees against the award.

Fla. Stat. § 768.79(1).[1] Pursuant to the Florida Rules of Civil Procedure, for an offer of judgment to fall within the purview of Fla. Stat. § 768.79, it must be in writing and identify the Florida statute under which it is made. Fla. R. Civ. P. 1.442(c)(1). In addition, the offer must, among other things:

> (C) state with particularity any relevant conditions;
>
> (D) state the total amount of the proposal and state with particularity all nonmonetary terms of the proposal; [and]
>
> (E) state whether the proposal includes attorneys' fees and whether attorneys' fees are part of the legal claim. . . .

Fla. R. Civ. P. 1.442(c)(2)(C)–(E).

Thus, the terms of the statute itself indicate that offering to settle only one of a number of claims does not invalidate an offer of judgment so long as it is clear which claims are to be extinguished. *Saenz v. Campos*, 967 So. 2d 1114, 1116–17 (Fla. 4th Dist. Ct. App. 2007). Moreover, an offer of judgment must state whether or not it includes the attorneys' fees. Fla. R. Civ. P. 1.442(c)(2)(E). Rule 1.442, in fact, was revised in 1996 by the Florida Supreme Court expressly to remove language to the effect that "the offer shall settle all pending claims . . . and shall state the total amount of the offer," Fla. R. Civ. P. 1.442 (1990), and replacing it with the requirement that the proposal for settlement "state whether the proposal includes attorneys' fees and whether attorneys' fees are part of the legal claim." Fla. R. Civ. P. 1.442 (1996).

Jablonski does not argue that St. Paul's Offer of Judgment was unclear as to whether it was intended to cover attorneys' fees or that it omitted to recognize that attorneys' fees were part of Jablonski's legal claim. Rather, Jablonski argues that St. Paul's offer is "invalid because it purports to exclude derivative claims for attorneys' fees." (Doc. No. 396, at 2.) In support of that argument, Jablonski relies primarily upon *McMahan v. Toto*, 311 F.3d 1077, 1082 (11th Cir. 2002), in which the Eleventh Circuit stated: "Where an offer explicitly excludes attorney's fees, it is invalid because the total amount of the proposal is not stated." The Eleventh Circuit did in fact make that statement, citing in support thereof

---

[1] The statute also addresses offers of judgment made by a plaintiff, specifies the format and content of an offer that falls within the purview of the statute, and provides the mechanism by which a party triggers its application post-judgment

*State Farm Life Insurance Co. v. Bass*, 605 So. 2d 908, 910 (Fla. 3d Dist. Ct. App. 1992), a 1992 case applying the pre-1996 version of Rule 1.442. The statement in *McMahan*, however, amounts to nothing more than *dictum*, as the court actually held that because the offer in question was expressly intended to settle "all claims made in this action" and, because it did not exclude attorneys' fees, it presumptively covered them. *Id.* Despite the Eleventh Circuit's apparently erroneous reference to a holding relying on the pre-1996 version of the Rule, the Eleventh Circuit itself recognized in the same paragraph that current Rule 1.442 no longer requires that all claims, including those for attorney's fees, be covered by an offer of judgment. *See id.* (stating: "Florida Rule of Civil Procedure 1.442 governs settlements and provides that a settlement proposal must 'state the total amount of the proposal . . . [and] state whether the proposal includes attorney's fees.' That rule applies to offers made pursuant to § 768.79." (citing Fla. R. Civ. P. 1.442(c)(2)(D) and (F)). In other words, the law is unambiguous in its requirement that an offer be clear as to which claims it proposes to settle and which is does not.[2]

This Court, based on Fla. R. Civ. P. 1.442(c)(2)(E) as interpreted and applied by Florida state courts, *see, e.g.*, *Connell v. Floyd*, 866 So.2d 90, 92 (Fla. 1st DCA 2004); *Miami-Dade Co. v. Ferrer*, 943 So. 2d 288, 290 (Fla. 3d DCA 2006); *Saenz*, 967 So. 2d at 1117, finds that St. Paul's offer is not rendered invalid by its express exclusion of any intent to settle Jablonski's statutory attorneys' fee claim.

### 2. The Offer of Judgment Was Ambiguous.

"[T]he particularity requirement of Rule 1.442 . . . requires that settlement proposals 'state with particularity any relevant conditions' and also 'state with particularity all nonmonetary terms.'" *State Farm Mut. Auto Ins. Co. v. Nichols*, 932 So. 2d 1067, 1078 (Fla. 2006) (quoting Fla. R. Civ. P. 1.442(c)(2)(C)–(D)). Under this rule, an offer of judgment must "be sufficiently clear and definite to allow the offeree to make an informed decision without needing clarification." *Id.* at 1079. A proposal does not satisfy this

---

[2] Jablonski also relies on *White v. Steak & Ale of Florida*, 816 So. 2d 546 (Fla. 2002), and *Danis Industries Corp. v. Ground Improvement Techniques, Inc.*, 645 So. 2d 420 (Fla. 1994), in support of his argument that the failure of the settlement proposal to cover his attorneys' fee claim renders the proposal invalid for purposes of Fla. Civ. P. 1.442. His reliance on those cases is likewise misplaced. *White*, as discussed below**,** held that taxable costs and attorneys' fees must be taken into consideration solely for the purpose of determining if the 25%-less-than-the-offer threshold is reached; the case does not require that the offeror actually include those amounts in his offer of judgment. *White*, 816 So. 2d at 550. *Danis* merely held that in the event an offer of judgment is *silent* as to whether it is intended to cover a claim for attorneys' fees, the law will presume that claim included. *Danis*, 645 So. 2d at 412–22. It has no bearing whatsoever on the question of whether an offer of judgment is required to cover attorneys' fees.

particularity requirement "if ambiguity within the proposal could reasonably affect the offeree's decision" whether to accept the offer. *Id.* Moreover, any attendant "releases" supplied by the offeror accompanying a proposed offer of judgment must also meet the same particularity requirement as the offer itself. *Sparklin v. S. Indus. Assocs., Inc.*, 960 So. 2d 895, 897–98 (Fla. 5th Dist. Ct. App. 2007); *Stasio v. McManaway*, 936 So. 2d 676, 678 (Fla. 5th Dist. Ct. App. 2006).

As indicated above, St. Paul's Offer of Judgment/Proposal for Settlement ("Offer of Judgment"), presented under the auspices of § 768.79, was also accompanied by a proposed Release and Settlement Agreement ("Release"). (Doc. No. 396, Ex. D.) Jablonski argues that St. Paul's Offer of Judgment was fatally ambiguous in this case because the language of the accompanying Release deviated from that of the Offer of Judgment such that he was unable to accept or decline the settlement without additional clarification of its terms. Specifically, Jablonski points to language in the Release which he argues would have effectively eliminated his right later to prosecute his claims for punitive damages and attorneys' fees.

First, Jablonski argues that the Release language called for a "full and final settlement of bad faith and statutory claims" (Doc. No. 396, Ex. D at 43 ¶ 3(e)), which he claims would have included his punitive damage and attorneys' fee claims. Jablonski fails, however, to quote the remainder of that same sentence, which states "with the exception of [Jablonski's] claim for punitive damages and attorneys' fees." *Id*. Second, Jablonski contends that the Release language which would have relieved St. Paul "of any responsibility for any lien, fees, expense, or other cost or loss related to the prosecution or settlement of the RELEASED CLAIMS," would also have had the effect of limiting any attorneys' fees Jablonski might recover to fees associated with the "unreleased claims," here, punitive damages. (*Id.* ¶ 3(c)). Again, however, it is clear that the Release itself defines "RELEASED CLAIMS" specifically to exclude all claims for "attorneys' fees." The term "RELEASED CLAIMS" therefore cannot reasonably be interpreted at a later point in the document to eliminate Jablonski's ability to recover attorneys' fees.

Jablonski does, however, raise a legitimate concern regarding the Release's confidentiality provision and its incorporation of a requirement that he return to St. Paul all documents he had received during discovery. Jablonski argues that his compliance with these proposed requirements would have substantially impaired his ability to continue to prosecute his claims for attorneys' fees and punitive damages. To the extent that St. Paul now clarifies that it did not expect Jablonski to return the discovery

materials before the exhaustion of his case, the very necessity of such clarification implicitly concedes the ambiguity of its Release. Such clarification would not cure any existing ambiguity, because the settlement documents themselves must be clear and unambiguous without further clarification. *State Farm Mut. Auto Ins. Co. v. Nichols*, 932 So. 2d 1067, 1079 (Fla. 2006). Simply put, without knowing what his obligations were as to the return of the discovery material, that is, without knowing *when* he would have to return them, Jablonski could not make an informed decision regarding the Offer of Judgment. The Court therefore agrees with Jablonski that the offer was ambiguous and, as such, cannot qualify as an Offer of Judgment under § 768.79 that would entitle St. Paul to recover its attorneys' fees.

### 3. The Judgment Obtained Was Greater Than 75% of the Amount Offered in Settlement.

A defendant is only entitled to recover attorneys' fees based on a plaintiff's rejection of its offer of judgment when the judgment obtained by the plaintiff at trial is less than 75% of the amount offered in settlement. Fla. Stat. § 768.79. However, "the 'judgment obtained' pursuant to section 768.79 includes the net judgment for damages *and any attorneys' fees and taxable costs that could have been included in a final judgment if such a final judgment was entered on the date of the offer*." *White v. Steak & Ale of Fla.*, 816, So. 2d 546, 551 (Fla. 2002) (emphasis added). Consequently, while an offer of judgment may expressly exclude settlement of a claim for attorneys' fees, a defendant who elects to exclude attorneys' fees from an offer of judgment acts at its own risk because, if the plaintiff has a valid claim for attorney's fees, the fees incurred as of the date of the offer must later be added to the plaintiff's final judgment for purposes of determining whether the defendant's offer meets the percentage threshold of § 768.79. *Am. Honda Motor Co. v. Fontana*, No. CVA1 05-61, 2007 WL 1427554, at *6–*8 (Fla. Cir. Ct. May 7, 2007).

In the present case, St. Paul made an Offer of Judgment exclusive of punitive damages and attorneys' fees in the amount of $400,000 on January 23, 2009. In order to avoid liability for St. Paul's attorneys' fees incurred after that date, Jablonski's "judgment obtained" must be greater than 25% less than the settlement amount, or in this case greater than $300,000. At the conclusion of trial, Jablonski was awarded $126,000 in compensatory damages on his bad faith claim, leaving a shortfall of $174,000.01. However, Jablonski's attorneys' fees and taxable costs incurred from the date he filed the case, June 14, 2007, through the date of the Offer of Judgment, January 23, 2009, must be added to his $126,000 for purposes of determining if the § 768.79 threshold was met. Jablonski asserts that he had

incurred $992,565.00 in attorneys' fees as of the date of the Offer of Judgment. Although this Court will reserve analysis of the amount of attorneys' fees to which Jablonski is entitled until the discussion of Jablonski's motion in Section II, *infra*, suffice to say for present purposes that the evidence is clear that the amount of attorneys' fees Jablonski had incurred as of the date of the Offer of Judgment was substantially in excess of $174,000.01 and therefore more than sufficient for purposes of § 768.79.[3] As a result, even if the Court assumes that the Offer of Judgment was valid for purposes of § 768.79, St. Paul's claim for attorneys' fees fails for the simple fact that the "judgment obtained" by Jablonski, including attorneys' fees and costs incurred by the date of the offer, is greater than 25% less than the Offer of Judgment.

### 4. *Jablonski's Claim for Punitive Damages was not Frivolous.*

St. Paul also asserts that it is entitled to recover that portion of its attorneys' fees expended in defense of Jablonski's punitive damages claim, because Jablonski's claim for punitive damages was "frivolous" as defined by 28 U.S.C. § 1927. Jablonski defends his claim for punitive damages, maintaining that, though he did not prevail on that claim, it was not frivolous. For the reasons articulated below, this Court finds that Jablonski's claim for punitive damages, while ultimately unsuccessful, was not frivolous. Accordingly, the portion of St. Paul's motion for attorneys' fees predicated upon § 28 U.S.C. 1927 will be denied. Nor, however, will Jablonski be entitled to recover fees incurred in responding to St. Paul's motion for fees, as he requested.

"Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. An attorney's conduct is considered "unreasonable and vexatious" when it is tantamount to bad faith. *Hudson v. Int'l Computer Negotiations, Inc.*, 499 F.3d 1252, 1261–62 (11th Cir. 2007) (citing *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997)). "Bad faith exists where an attorney knowingly or recklessly pursues a frivolous claim." *Footman v. Cheung*, 139 Fed. Appx. 144, 146 (11th Cir. 2005) (internal citations omitted). "[O]bjectively

---

[3] In light of the Court's determination, see part II.B.2 below, that Jablonski is entitled to recover attorneys' fees in the amount of $1,212,218 for work done from the inception of the case in June 2007 through June 2009, it is evident that more than $174,000.01 of that amount was incurred by Jablonski's counsel for work performed from June 2007 through January 2009, the date of the Offer of Judgment. This conclusion is further supported by Jablonski's allocation of attorneys' hours for the period prior to the Offer of Judgment. (Doc. No. 391, Ex. C.)

reckless conduct is enough to warrant sanctions even if the attorney does not act knowingly and malevolently." *Amlong & Amlong, P.A. v. Denny's Inc.*, 500 F.3d 1230, 1241 (11th Cir. 2007). However, an attorney's conduct does not warrant sanctions simply because it fails to meet the standard of a reasonable attorney. *Id*. at 1242. "[Section] 1927 sanctions should be imposed only in instances of a serious and studied disregard for the orderly process of justice." *Perry v. Orange County*, 341 F. Supp. 2d 1197, 1216 (M.D. Fla. 2004) (internal citations omitted).

St. Paul first posits that Jablonski's claim for punitive damages was frivolous from its inception based on precedent that, it argues, provided Jablonski with notice that he must provide evidence of at least four "other claims" beyond his own in order to prevail on his claim for punitive damages. St. Paul alternatively argues that, even if Jablonski was not initially aware that his claim was frivolous based on an erroneous understanding of precedent, then he was effectively put on notice when this Court, in denying St. Paul's Motion for Summary Judgment (Doc. 272), advised that Jablonski must present evidence of acts beyond his own claim at trial in order to prevail on his punitive damages claim. (Doc. 272.)

The Florida Supreme Court has recognized that in order to establish entitlement to recover punitive damages, the plaintiff must show that the bad faith acts of the defendant took place "with such frequency as to indicate a general business practice." Fla. Stat. § 624.155(5), *cited in Howell-Demarest v. State Farm Mut. Auto. Ins. Co.*, 673 So. 2d 526, 528 (Fla. 1996). In *Howell-Demarest*, the Florida Supreme Court further stated, with reference to the specific fact pattern of the case before it that to establish a general business practice, "the insured would have to demonstrate that [the insurer] engaged in this practice far more frequently than [the insured's case and three other cases]." *Howell-Demarest*, 673 So. 2d at 529. St. Paul contends that the holding of *Howell-Demarest* clearly requires that, in order to show a "general business practice," a plaintiff must use "other claims" evidence consisting of at least four or more claims outside his own claim. Under St. Paul's rationale, then, not even an admission by the CEO of a company would be sufficient to prove a "general business practice" as required by *Howell-Demarest*.

The state of Florida law in this area is unclear. Even the case cited as following *Howell-Demarest* only requires "evidence of more than just [a plaintiff's] own claim that would permit a reasonable jury to conclude that [the insurer] engaged in unfair acts as a general business practice." *Shannon R. Ginn*

*Constr. Co. v. Reliance Ins. Co.*, 51 F. Supp. 2d. 1347, 1353–54 (S.D. Fla. 1999). This Court recognized as much when charging the jury that Jablonski must have shown actions outside his own claim (Doc. 346), and again when denying Jablonski's motion for a new trial (Doc. 385). Accordingly, this Court continues to read *Howell-Demarest* as standing only for the more limited proposition that, in order to show a general business practice, a plaintiff must show "other acts" outside his own claim; if, and only if, a plaintiff chooses to use "other claims" evidence to satisfy this "other acts" requirement, it is then, and only then, that the plaintiff must produce evidence of far more than three other claims in addition to his own to show a general business practice.

Finally, though some of the language previously used by the Court may be interpreted as requiring "other claims" evidence, the Court has only stated that the attempt to show a general business practice by inference—that is, through general testimony by St. Paul's corporate officers that Jablonski's claim was handled in accordance with St. Paul's business practices—would likely be insufficient to show a "general business practice." The error, if any, by the Court in this respect was harmless because: (1) the motion to dismiss was denied; and (2) the jury was properly instructed that Jablonski need only show evidence of "other acts," not "other claims," to show a general business practice. For all of the foregoing reasons, though Jablonski did not ultimately prevail on his punitive damages claim, the Court finds that his claim was clearly not frivolous.

### B. Jablonski Is Entitled to Reasonable Attorneys' Fees and Costs.

Jablonski claims that he is entitled to approximately $3,649,169 in attorneys' fees and costs. St. Paul unsurprisingly contends that a lesser amount—$126,000 in attorneys' fees and $32,388.59 in costs—should be awarded instead. For the reasons explained more fully below, this Court finds that Jablonski is entitled pursuant to Florida statute to recover reasonably attorneys' fees and costs associated with this action, and that attorneys' fees in the amount of $1,212,218 and costs in the amount of $32,443.59, totaling $1,244,661.59, are reasonable. The Court will enter an award for fees and costs in that amount, exclusive of interest. In reaching this figure, the Court finds that: (1) this dispute concerned the amount of fees, not entitlement to fees, therefore Jablonski is not entitled to attorneys' fees incurred in litigating the issue of fees; (2) the lodestar calculation of $1,557,073 contained excessive rates and hours, and will therefore be reduced to $1,212,218, but is otherwise not unreasonable in relation to

the plaintiff's recovery; (3) a contingency-risk multiplier is not appropriate in this case; and (4) Jablonski is only entitled to the taxable costs available under 28 U.S.C. § 1920, and those costs will be reduced to from $90,909.31 to $32,443.59.

### 1. Jablonski Is Not Entitled to Attorneys' Fees Incurred in Litigating the Amount of Fees.

Jablonski claims that he is entitled to attorneys' fees incurred in pursuing his motion for fees because St. Paul's objection to his fee request constitutes a dispute over *entitlement* to the fees rather than merely over the *amount*. St. Paul, for its part, maintains that this post-judgment phase of litigation concerns the amount of the fees, not entitlement to fees. Florida law is clear that attorneys' fees incurred in the course of a dispute concerning attorneys' fees are only recoverable under fee-shifting statutes when the dispute is over the "entitlement" of the plaintiff's attorneys to such fees, but not for litigation pertaining to the "amount" of reasonable fees owed. *State Farm Fire & Cas. Co. v. Palma*, 629 So. 2d 830, 831–32 (Fla. 1993). Furthermore, the Florida Supreme Court has indicated that a dispute over attorneys' fees incurred following an offer of judgment is one over their amount, not entitlement to them. *Scottsdale Ins. Co. v. DeSalvo*, 748 So. 2d 941, 944 (Fla. 1999). Here, St. Paul expressly concedes that "Plaintiff is entitled to some reasonable fee." (Doc. No. 420, at 20.) The fact that St. Paul disputes the amount of such fees, or even seeks to offset their amount against its own claim for attorneys' fees, does not change the nature of this litigation to one over entitlement.

For the foregoing reasons, this Court is persuaded that this dispute, at its heart, concerns the amount of the fees to which Jablonski is ultimately entitled, not his entitlement to them, and therefore declines to award Jablonski attorneys' fees incurred in the prosecution of the present fee dispute.

### 2. Jablonski's Claim for Attorneys' Fees Will Be Reduced in Part.

Both St. Paul and Jablonski agree that Jablonski is entitled to some amount of reasonable attorneys' fees under Fla. Stat. § 624.155(4).[4] The burden is on the plaintiff to demonstrate the reasonableness of the amount of fees to which he is entitled. *Fla. Patient's Compensation Fund v. Rowe*, 472 So. 2d 1145, 1151 (Fla. 1985). Florida primarily utilizes the "lodestar" method in determining reasonable attorneys' fee awards. *Bell v. U.S.B. Acquisition Co., Inc.*, 734 So. 2d 403, 406–07 (Fla.

---

[4] This provision states: "Upon adverse adjudication at trial or upon appeal, the authorized insurer shall be liable for damages, together with court costs and reasonable attorney's fees incurred by the plaintiff." Fla. Stat. § 624.155(4).

1999). The lodestar method multiplies what the court determines to be a reasonable hourly rate by the number of hours which were reasonably spent on the matter. After calculating the lodestar, the court may add or subtract from the fee based upon a contingency risk factor, or "multiplier," and on the results obtained. *Id*. Ultimately, however, the judge retains discretion when determining the reasonableness of a fee award. *Rowe*, 472 So. 2d at 1150.

Florida Rule of Professional Conduct 4-1.5(b) provides the factors for courts to consider in arriving at a lodestar fee amount:

> (1) the time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature;
>
> (4) the significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services; and
>
> (8) whether the fee is fixed or contingent, and, if fixed as to amount or rate, then whether the client's ability to pay rested to any significant degree on the outcome of the representation.

In addition, the Florida Supreme Court has articulated factors a court *should* consider when awarding a multiplier of the lodestar amount in determining reasonable attorneys' fees. These factors too are discretionary, and are only "a useful tool which can assist trial courts in determining a reasonable fee." *Standard Guaranty Ins. Co. v. Quanstrom*, 555 So. 2d 828, 834 (Fla. 1990). In cases of tort and contracts, trial courts should consider the following factors in determining whether a multiplier is necessary:

> (1) whether the relevant market requires a contingency fee multiplier to obtain competent counsel; (2) whether the attorney was able to mitigate the risk of nonpayment in any way; and (3) whether any of the factors set forth in *Rowe* are applicable, especially, the amount involved, the results obtained, and the type of fee arrangement between the attorney and his client. Evidence of these factors must be presented to justify the

utilization of a multiplier.

*Id*.

Finally, if relevant, the court *may* apply a multiplier in accordance with guidelines established by the Florida Supreme Court:

> If the trial court determines that success was more likely than not at the outset, it *may* apply a multiplier of 1 to 1.5; if the trial court determines that the likelihood of success was approximately even at the outset, the trial judge *may* apply a multiplier of 1.5 to 2.0; and if the trial court determines that success was unlikely at the outset of the case, it *may* apply a multiplier of 2.0 to 2.5. Accordingly, our *Rowe* decision is modified to allow a multiplier *from 1 to 2.5*.

*Id* (emphasis added).

In the present case, Jablonski is asking for a lodestar fee starting point based on 5,741.58 hours worked by five attorneys (Mazer, Moore, Lumpkin, Greyber, and Peraza) and two staffers, whose rates ranged from $500 an hour to $95 per hour. For the period in question, the number of hours worked multiplied by the applicable hourly rates yields a total of $1,557,073. Jablonski further requests that the Court apply a multiplier of 2.0 to this amount, bringing the total requested attorneys' fees to $3,114,146. In response to Jablonski's motion, St. Paul contends that the amount requested is excessive, primarily because it does not bear a reasonable relationship to the compensatory damages awarded by the jury at trial, and instead argues that the attorneys' fees awarded should be equal to the compensatory damages award, $126,000, or, at most, 133% of that figure. St. Paul's extremely low counter-example of a "reasonable fee" is unhelpful, to say the least. However, considering the extensive size of Jablonski's fee application, and the commensurately sized response by St. Paul, the Court recognizes that an "hour-by-hour" review of the time expended by the plaintiff on this case would be a waste of judicial resources. *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994).

With respect to the reasonableness of the rates charged by plaintiff's counsel, the Court finds that hourly rates claimed for Mr. Lumpkin ($500) and Ms. Moore ($300) in this case were excessive, and therefore those rates will be reduced to $400 and $250 per hour, respectively. In reaching this conclusion, the Court relies both on Jablonski's own expert, who averred that a "reasonable" hourly rate for Mr. Lumpkin would have been $350 in 207, $395 in 2008, and $425 in 2009, for an average of $390 per hour, and that a reasonable hourly rate for Ms. Moore over the three-year time period at issue would have averaged approximately $256 per hour (*see* Affidavit in Support of Attorneys' Fees, Doc. 391-5, at

18). Similarly, St. Paul's expert opined that $325 to $400 per hour is a reasonable rate only for 20-year-plus veterans with extensive litigation experience, applying best here to Mr. Lumpkin, and further that $175–275 was a reasonable hourly rate for lawyers with less than 10 years of experience, within which category Ms. Moore falls. (Affidavit of Carl Joseph Coleman, Doc. 420-1, at 5.) The other hourly rates charged appear reasonable in light of each individual's experience.

In addition, the Court finds that the number of hours Jablonski's counsel devoted to the case (5,741.58) is excessive. That figure will therefore be reduced by 1,000 hours at a rate of $250 per hour, or by $250,000 in total. In reaching this number the Court has considered both St. Paul's expert's opinion that, at most, 2,266.05 total hours was reasonable (Affidavit of Carl Joseph Coleman, Doc. 420-1, at 10), and Jablonski's expert's opinion that a total of 5,742.3 hours was reasonable. (Affidavit in Support of Attorneys' Fees, Doc. 391-5, at 16) And, while the Court has elected a rate of $250 per hour, it has done so not because it specifically found Ms. Moore's hours to be excessive, but, on the contrary, solely because utilizing that lower rate reaches a more equitable result, and one actually more beneficial to Jablonski than a pro-rata reduction of that same number of hours at rate divided proportionately amongst the various attorneys.

Based on the foregoing factors, Jablonski will be entitled to receive lodestar attorneys' fees in the amount of $1,212,218, which the Court reaches through making the following calculation: $1,557,073 minus $9,450 (reduction in Lumpkin's rate from $500 to $400 per hour multiplied by 94.5 hours) minus $85,405 (reduction in Moore's rate from $300 to $250 per hour multiplied by 1,708.1 hours) minus $250,000 (reduction of 1,000 hours of various labor at $250 an hour) equals $1,212,218.[5]

The next question is whether any multiplier should be applied to that figure. Jablonski argues that the first of the factors listed above, obtaining competent counsel, is the most important one for the court to consider in determining whether a multiplier is appropriate. "In this way the availability of the multiplier levels the playing field between parties with unequal abilities to secure legal representation." (Doc. No.

---

[5] St. Paul contends that Florida law precludes attorneys' fee awards in excess of the damages obtained at trial. However, Jablonski has supplied the Court with cases which do allow for attorneys' fees greater than the compensatory damages awarded at trial; in one case, by more than 40,000 percent. *State Farm Fire & Cas. Co. v. Palma*, 524 So.2d 1035-1036 (Fla. 4th Dist. Ct. App. 1988). As Jablonski notes, "'[b]oth parties gave as well as they received and the resulting high cost of litigation should not come as a surprise to either party.'" (Doc. No. 391, at 9 (citing *Zunde v. Intl. Paper Co.*, 2000 WL 1763843 at *1 (M.D. Fla. July 20, 2000).) St. Paul was entitled to contest this litigation vigorously, but it assumed the risk, in light of the fee-shifting statute, that it could face liability for all of Jablonski's attorneys' fees.

391, at 21 (citing *Bell v. U.S.B. Acquisition Co.*, 734 So. 2d 403, 411 (Fla. 1999).) Jablonski's fee expert further opined that the market for insurance litigation in the applicable region requires that cases be taken on a contingent basis. (Affidavit in Support of Attorneys' Fees, Doc. 391-5, at 16.) Plaintiff's counsel also averred that Jablonski contacted several attorneys who rejected his case before plaintiff's counsel's firm accepted the case on a contingent basis. Finally, Jablonski's fee expert opines that a multiplier of 2.0 would be appropriate. (*Id*. at 15) St. Paul for its part argues that a multiplier is not appropriate in this case because of "the amount involved" and the "results obtained." (Def.'s Response, Doc. No. 420, at 12 (citing *Quanstrom*, 555 So. 2d at 834).)

Upon reviewing the parties' arguments and expert opinions in light of the factors suggested in *Quanstrom*, the Court finds that a contingency risk multiplier is not appropriate in this case because, while the relevant market for insurance litigation does typically require a contingent fee arrangement to incentivize competent counsel, it does *not* require a multiplier. The Court further finds that the risk of non-payment was mitigated by the client fee arrangement plaintiff's counsel entered into with their client, which provided that Jablonski's counsel would be entitled to be paid the "greater of" this contingent amount or the attorneys' fees to be awarded under § 627.428. The ability of plaintiff's counsel to elect their fee mitigates the risk of receiving an insufficient contingent fee amount at trial—in that event counsel would just elect the fee-shifting provision, as they have done here—because they retain the right to collect their contingent amount if the recovery is substantial enough.

Moreover, the Court finds that, though the "*Rowe* factors" are relevant in establishing the reasonable lodestar fee to be awarded in this case, *supra*, those factors do not militate in favor of applying a multiplier. First, of course, the judgment obtained was quite low in proportion to the damages sought. Moreover, the risk of non-payment—that Jablonski's attorneys would not collect any fee—would have been effectively eliminated if Jablonski had decided to accept the Offer of Judgment. While Jablonski and his counsel had pecuniary reasons to bet on winning higher compensatory damages as well as the punitive damages claim at trial, by so doing they bore the risk that they would not succeed on *either* claim, thereby forfeiting their ability to shift *any* attorneys' fees.

In sum, the Court will not apply a multiplier, and will enter a fee award totaling $1,212,218.

### 3. *Jablonski is Only Entitled to the Taxable Costs Available Under § 1920.*

Jablonski claims that he is entitled to taxable costs of $90,909.31 under 28 U.S.C. § 1920, and also requests an additional $206,940 under Fla. Stat. § 624.155. (Pl.'s Reply, Doc. No. 427, at 17.) St. Paul argues that Jablonski should be awarded no more than $32,388.59 in taxable costs available under § 1920. (Def.'s Response at 25.) For the reasons to follow, the Court finds that Jablonski is entitled to recover the taxable costs permitted under § 1920, and furthermore that the amount of costs he has requested under that provision is not adequately support and therefore must be reduced to $32,443.59.

As both parties agree, "the issue of costs is not determined by state law in a diversity case." *Zunde v. Int'l Paper Co.*, No. 3:98CV439-J-20B, 2000 WL 1763843, at *1 (M.D. Fla. July 20, 2000). Instead, 28 U.S.C. § 1920 determines the ability to shift costs. *Barneby v. E.F. Hutton & Co.*, 130 F.R.D. 679, 683–84 (M.D. Fla. 1999). The only exception by which state law provides the rules for determining costs is where the applicable state law expands the costs allowed under § 1920. *Parkes v. Hall*, 906 F.2d 658, 660 (11th Cir. 1990). But, in order to do so, the substantive law to be applied must "explicit[ly]" authorize the allowance of additional costs. *Id.* at 659 (citing *Crawford Fitting Co. v. J.T. Gibbons Inc.*, 482 U.S. 437 (1987); *id.* at 660 (citing *Glenn v. General Motors Corp.*, 841 F.2d 1567, 1574–75 (11th Cir. 1988) (refusing to shift witness fees because the statute in question did not refer explicitly to witness fees, as required by *Crawford Fitting*); *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240 (1975) (noting that state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed) (internal citations omitted)).

Jablonski argues that the use of the phrase "court costs" under Fla. Stat. § 624.155 should be read to mean "all costs." (Pl.'s Motion at 23). In support of his contention, Jablonski cites *Jones v. ETS of New Orleans*, which involved a workers' compensation lien statute whose reference to "court costs" was construed to mean "all costs" incurred. 793 So. 2d 912 (Fla. 2001). In the alternative, Jablonski argues that "court costs" under Fla. Stat. § 624.155 must at least include taxable costs under Florida law because this Court must reference Florida's statutory costs guidelines, and those guidelines provide a more expansive definition of taxable costs than § 1920. On that basis, Jablonski contends the Court in obligated to shift these costs pursuant to Florida substantive law. (Doc. No. 427, at 16 (citing *In re Amendments to Uniform Guidelines for Taxation of Costs*, 915 So. 2d 612, 616 (Fla. 2005)).

St. Paul counters that § 1920 should control the issue of costs because the Fla. Stat. § 624.155 does not expand the costs permitted under § 1920. St. Paul distinguishes *Jones* from the present case by arguing that *Jones*, in assessing costs under a different statute, Fla. Stat. § 440.39(3)(a), found that that statute expansively referenced the issue of costs and even specifically referred to "all costs expended by the plaintiff" and "costs incurred by the employee"; and, as such, explicitly provided for a more expansive definition of costs than § 1920. (Def.'s Response at 23 (citing *Jones*, 793 So. 2d at 915).) By contrast, St. Paul notes, "the term 'court costs' is used only once in § 624.155." (Def.'s Response at 24.) Finally, St. Paul contends that, because *Jones* was decided under the entirely different context of a workers' compensation regime, it offers this Court little guidance.

Upon reviewing the parties' arguments and the applicable case law, this Court is persuaded that § 1920, and not Fla. Stat. § 624.155, governs the shifting of costs in this case. As the foregoing cases have made clear, state substantive law on fee shifting may be applied in lieu of § 1920 if, and only if, it explicitly expands the right to additional costs. Here, the solitary reference to "court costs" contained in Fla. Stat. § 624.155 does not "expressly" expand upon what is otherwise allowable under § 1920. *Jones*, in interpreting § 440.39(3)(a), seemingly strained to find that even that statute, which contained expansive fee-shifting language, militated in favor of a finding that it contemplated the shifting of fees beyond those provided for under § 1920. *Jones*, 793 So. 2d 912. Furthermore, Jablonski's reliance on the Uniform Guidelines for Taxation of Costs is equally unavailing given that those guidelines are "advisory only" and reiterate that the "taxation of costs . . . is within the broad discretion of the trial court." *In re Amendments*, 915 So. 2d 612, 614. Such discretionary language in advisory guidelines cannot direct federal courts to award costs in derogation of § 1920 to the extent that an expressly worded state statute would.

Finally, in requesting an additional $133,824 in taxable costs under Fla. Stat. § 624.155, Jablonski has failed to meet his burden "to show that all requested costs were reasonable and necessary" in this case. *Id*. Plaintiff's oblique statement that "[s]uch costs will be provided upon entitlement to the same" clearly does not meet this burden. (Pl.'s Motion at 24.) Nor was this defect later cured by Jablonski's reference to Exhibits D and E which enumerate and summarize, but do not justify, the requested costs. (Pl.'s Reply at 17.) Jablonski even neglected to include a table summarizing his taxable costs, and instead, included two copies of his non-taxable cost summaries. (Doc. No. 427-1, at 65–66.)

Jablonski also requests $90,909.31 in taxable costs under 28 U.S.C. § 1920. (Pl.'s Reply at 17.) That figure includes $5,940.99 in "other costs," $59,085.50 for printed and electronically recorded transcripts, $25,627.82 in exemplification and copying costs, $135 in subpoena service fees, and $120 in witness fees. (Doc. No. 391-8, at 24.) St. Paul argues, however, that Jablonski should be awarded no more than $32,388.59 in taxable costs.

The $5,940.99[6] Jablonski classifies as "other costs" consists of $4,815.49 in travel expenses, $1,125.50 in local counsel fees, and $522 in mediation expenses. St. Paul, however, correctly notes that, "[u]nder § 1920, travel expenses are not taxable costs." (Def.'s Response at 4) (citing *Corwin v. Walt Disney Co.*, 468 F.3d 1329, 1346 (11th Cir. 2006).) Nor are the costs incurred in mediating a dispute, *Gary Brown & Assoc., Inc. v. Ashdon, Inc.*, 268 Fed. Appx. 837, 845–46 (11th Cir. 2008)), or those incurred to pay attorneys' fees for local counsel. *Barneby v. E.F. Hutton & Co.*, 130 F.R.D. 679, 683 (M.D. Fla. 1990)). For the foregoing reasons, this Court finds that these costs are not taxable under § 1920. Finally, to the extent that local counsel fees are properly considered as attorneys' fees, they have already been incorporated into the Court's allocation of reasonable attorneys' fees, *supra*.

Jablonski claims $25,627.82 in exemplification and copying costs. St. Paul argues that because Jablonski does not justify the necessity of the copying expenses, they're not properly reimbursable. St. Paul also argues that, regardless, any electronic, non-paper copying costs are not taxable under § 1920, and therefore Jablonski cannot be reimbursed for things such as "document imaging" or "electronic labeling."

The burden of establishing entitlement to photocopying expenses lies with the prevailing party. *Scelta v. Delicatessen Support Servs.*, 203 F. Supp. 2d 1328, 1340 (M.D. Fla. 2002) (denying reimbursement for photocopies where the prevailing party failed to sufficiently describe them so as to permit a determination of which were necessarily obtained). The Eleventh Circuit has held that "[c]opies attributable to discovery" are a category of copies recoverable under § 1920(4). *EEOC v. W&O, Inc.*, 213 F.3d 600, 623 (11th Cir. 2000). However, this meaning has been construed narrowly, defining "copies of paper" to mean "reproductions involving paper in its various forms." *Arcadian Fertilizer, L.P. v. MPW*

---

[6] It appears that Jablonski mistakenly failed to include the $522.50 in his calculation which should amount to $6,463.49, but, as this Court has found all of the "other costs" ineligible, this error is immaterial.

*Indus. Servs., Inc.*, 249 F.3d 1293, 1296 (11th Cir. 2001). This Court finds it to be clear under *Arcadian Fertilizer* that "copies of paper in its various forms" converted to electronic format are not reimbursable.

Here, Jablonski has merely provided the court with his bill of costs and various invoices, he has not met his burden of providing the court with adequate information as to why all of these copies were reasonably necessary, nor has he provided any justification for copies and exemplification expenses which appear to be non-reimbursable under *Arcadian Fertilizer* because they are not "copies of paper in its various forms," such as "document imagining" or "glass work." For these reasons, the Court cannot grant Jablonski his requested $25,627.82 in exemplification and copying costs.

Jablonski also requests $59,085.50 associated with printed and electronically recorded transcripts. St. Paul argues that $32,188.59 is the amount properly taxable to it because Jablonski's request includes, among other things, ineligible expenses such as those incurred for the production of DVDs, ASCII disks, cassette tapes, mini-transcripts, and multiple transcript copies. (Doc. 420-2.)

The district court has "great latitude" in determining whether a deposition transcript was "necessarily obtained." *Newman v. A.E. Staley Mfg. Co.*, 648 F.2d 330, 337 (5th Cir. 1981). Section 1920(2) authorizes the taxation of costs for the "fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case." The Eleventh Circuit has construed § 1920(2) to include deposition transcript costs so long as the deposition was "necessarily obtained" for use in the case. *EEOC v. W&O, Inc.*, 213 F.3d 600, 621 (11th Cir. 2000). However, "where the deposition costs were merely incurred for convenience [or] to aid in thorough preparation . . . the costs are not recoverable." *Id*. Courts have further held that only one copy of each transcript is recoverable. *Tesler v. Cost Crociere* S.P.A., No. 08-60323-CIV, 2009 WL 1851091, at *2 (S.D. Fla. June 29, 2009).

In the present case, Jablonski requests reimbursement for printed and electronically recorded transcripts, but has not justified these various expenses. Again, it is not the best use of the Court's resources to comb through invoices. Therefore, these fees are denied beyond those otherwise already conceded by St. Paul in the amount of $32,188.59. Finally, the Court in its discretion finds the costs of $120 and $135 requested for witness appearance and service of process, respectively, to be reasonable. § 1920(1). In sum, Jablonski is entitled to a total of $32,443.59 in taxable fees pursuant to § 1920.

**III.     CONCLUSION**

For the reasons set forth above, St. Paul's Motion for Entitlement to Attorneys' Fees (Doc. No. 381) will be denied.  Jablonski's Verified Motion for Attorneys' Fees and Costs (Doc. No. 391) will be granted in part and denied in part, with Jablonski to be awarded in attorneys' fees of $1,212,218 and an additional $32,443.59 in costs, totaling $1,244,661.59.  An appropriate Order will enter.

_____
Thomas A. Wiseman, Jr.
Senior U.S. District Judge